*Attorney Grievance Commission of Maryland v. Jason Edward Rheinstein*, Misc. Docket AG No. 77, September Term, 2015.  Opinion by Battaglia, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred attorney who engaged in deceitful and dishonest conduct that was prejudicial to the administration of justice by misrepresenting facts to a circuit court judge in an effort to intimidate his opponents, advanced unsubstantiated claims of fraud against opposing party and led a tribunal to believe that opposing party had been facing criminal charges, without bases; his ill-motive was further demonstrated by his repeated attempts to disqualify any attorney retained by the opposing party and bully counsel into settling cases for ridiculous amounts; his pursuit of litigation in a vexatious manner and intolerable delay of the disciplinary proceeding also supported the sanction of disbarment.  Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 3.1 (Meritorious Claims and Contentions), 3.4 (Fairness to Opposing Party and Counsel), 4.4 (Respect for Rights of Third Persons), 8.4(a) (Violating MLRPC), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation) and 8.4(d) (Conduct that is Prejudicial to the Administration of Justice).

Circuit Court for Anne Arundel County
Case No.: C-02-CV-16-000597
Argued: November 5, 2019

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 77

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JASON EDWARD RHEINSTEIN

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Booth
Battaglia, Lynne, A.
    (Senior Judge, Specially Assigned),
Greene Jr., Clayton
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Battaglia, J.

_____

Filed: January 24, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Jason Edward Rheinstein ("Rheinstein"), Respondent, was admitted to the Bar of this Court on December 15, 2005. On February 17, 2016, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a),[1] filed a Petition for Disciplinary or Remedial Action ("Petition") against Rheinstein related to his representation of Charles and Felicia Moore. The Petition alleged that Rheinstein violated the following Maryland Rules of Professional Conduct ("Rule"): 1.1

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct were renamed the Maryland Attorneys' Rules of Professional Conduct and moved to Title 19, Chapter 300 of the Maryland Rules. Because all relevant conduct occurred prior to the revision, we shall refer to the Lawyers' Rules.

Rule 16-751(a), now Rule 19-721(a) provided, in relevant part:

(a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

(Competence),[2] 3.1 (Meritorious Claims and Contentions),[3] 3.2 (Expediting Litigation),[4]

3.4 (Fairness to Opposing Party and Counsel),[5] 4.4 (Respect for Rights of Third Persons)[6]

---

[2] Rule 1.1 provided: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

The revised Rule 1.1 is now numbered as Maryland Rule 19-301.1.

[3] Rule 3.1 provided:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

The revised Rule 3.1 is now numbered as Maryland Rule 19-303.1.

[4] Rule 3.2 provided: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

The revised Rule 3.2 is now numbered as Maryland Rule 19-303.2.

[5] Rule 3.4, in pertinent part, provided: "A lawyer shall not: (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"

The revised Rule 3.4 is now numbered as Maryland Rule 19-303.4.

[6] Rule 4.4 provided:

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.
(b) In communicating with third persons, a lawyer representing a client in a matter shall not seek information relating to the matter that the lawyer knows
(continued . . .)

2

and 8.4 (Misconduct).[7]  The allegations of the Petition stem from his representation in the Circuit Court for Baltimore City of the Moores in challenging confessed judgments entered against them based upon their default on a construction loan in the amount of $200,000.00 from Imagine Capital, Inc.

In an Order dated February 23, 2016, we referred the matter to Judge Paul F. Harris of the Circuit Court for Anne Arundel County for a hearing, pursuant to Maryland Rule 16-757.[8]  Judge Glenn L. Klavans of the Circuit Court for Anne Arundel County heard the

---

(continued . . .)

> or reasonably should know is protected from disclosure by statute or by an established evidentiary privilege, unless the protection has been waived.  The lawyer who receives information that is protected from disclosure shall (1) terminate the communication immediately and (2) give notice of the disclosure to any tribunal in which the matter is pending and to the person entitled to enforce the protection against disclosure.

The revised Rule 4.4 is now numbered as Maryland Rule 19-304.4.

[7] Rule 8.4, in pertinent part, provided:

> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice[.]

The revised Rule 8.4 is now numbered as Maryland Rule 19-308.4.

[8] Rule 16-757, currently renumbered as Rule 19-727, stated:

(continued . . .)

matter following Judge Harris's retirement; he determined that Rheinstein had committed discovery violations which warranted sanctions culminating in Respondent admitting the allegations in the Petition as well as being prohibited from presenting evidence, to include the presentation of experts.[9]  We begin with an extensive review of the procedural history.

---

(continued . . .)

**(a) Generally.** The hearing of all disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court.  Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge.  Before the conclusion of the hearing, the judge may permit any complainant testify, subject to cross-examination, regarding the effect of the alleged misconduct.  A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations.  Bar Counsel may respond to any evidence of remedial action.

**(b) Burdens of proof.**  The petitioner has the burden of proving the averments of the petition by clear and convincing evidence.  A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

**(c) Findings and conclusions.**  The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.  If dictated into the record, the statement shall by promptly transcribed.  Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing.  The clerk shall mail a copy of the statement to each party.

**(d) Transcript.**  The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

**(e) Transmittal of record.**  Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

[9] Rheinstein proffered what his experts would have testified about, as we discuss *infra*.

---

4

## PROCEDURAL HISTORY

Rheinstein was served with the Petition for Disciplinary or Remedial Action, our Order, and the Writ of Summons on April 22, 2016. On the same day, Bar Counsel served counsel for Respondent with Petitioner's First Set of Interrogatories and Petitioner's First Request for Production of Documents.

On May 12, 2016, Rheinstein filed, in the circuit court, "Respondent's Motion to Dismiss Petition for Disciplinary or Remedial Action for Failure to State a Claim and Lack of Ripeness; or in the Alternative, Motion for More Definite Statement; and Request for Hearing." On May 23, 2016, without responding to Bar Counsel's discovery requests and before his motion to dismiss was ruled upon, Respondent also filed a Notice of Removal in the United States District Court for the District of Maryland, contending that the federal court possessed jurisdiction because of federal questions and the federal officer removal statute.[10] Ten months later, on March 17, 2017, after Bar Counsel moved to have the case

---

[10] Respondent contended that the federal court possessed jurisdiction over the disciplinary action against him based upon 28 U.S.C. § 1441, which, in part, provides:

> (a) Generally. – Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
>
> ***
>
> (c) Joinder of Federal Law Claims and State Law Claims. –
> (1) If a civil action includes –
> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

(continued . . .)

5

remanded back to the state court, the federal district court did so, noting that it did not have jurisdiction over the matter, and, if it were to have possessed jurisdiction, it "would nevertheless have abstained and remanded the case to proceed in the state court." *Attorney*

---

(continued . . .)

    (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

    (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join or in consent to the removal under paragraph (1).

Respondent also posited that the federal court possessed federal officer jurisdiction over the suit, which is governed by 28 U.S.C. § 1442, and provides in part:

    (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending.

    (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

    (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

    (3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties.

    (4) Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

*Grievance Comm'n of Maryland v. Rheinstein*, No. MJG-16-1591, 2017 WL 1035831, at

*3 (D. Md. Mar. 17, 2017).

On June 8, 2017, upon remand, Judge Harris heard arguments on the 2016 motion

to dismiss and subsequently denied it. During this hearing, Judge Harris stated on the

record that the deadline for discovery was August 8, 2017, which was noted on the

Scheduling Conference Hearing Sheet, albeit not on the Scheduling Order:

> THE COURT: All right. We're going to conduct a scheduling conference. Have we – how do we stand time wise?
>
> [BAR COUNSEL]: Your Honor, I was doing the calculations and I know I had talked to your clerk about this too, service – the original service in this case was April 22, 2016, so pursuant to the Court's original order we had 120 days from that date to complete the hearing on this matter. The matter was removed to the federal court on May 23, 2016, so we've used up the first 30 days. It was remanded on March 17th, 2017. So I think between March 17th, if my math is correct and today, that's . . . an additional 85 days.
>
> But my suggestion would be, Your Honor, with the Court's permission, that we start the clock anew. Discovery has been propounded by the Petitioner, but as Your Honor knows the answer hasn't been filed yet, discovery responses haven't begun again. . . .
>
> THE COURT: Answers to your discovery have not been made?
>
> [BAR COUNSEL]: That's correct, Your Honor.
>
> THE COURT: Okay. When are they due?
>
> [BAR COUNSEL]: They were – oh, they were due – they've been long overdue, but I haven't filed a motion to comply.
>
> THE COURT: Well but I - - if discovery has already started I need to put limit on the discovery deadline. . . . Why haven't your responses been given yet?
>
> [COUNSEL FOR RESPONDENT]: It has been in the federal court since then.

7

THE COURT: Well it's not anymore is it?

[COUNSEL FOR RESPONDENT]: Well, Your Honor, two of the claims that they made involve federal lawsuits.

THE COURT: Uh-huh.

[COUNSEL FOR RESPONDENT]: And the issue was whether they should be resolved by the court in which they are filed under federal law and not in a Maryland court deciding what a federal court should do. And that has just ended with its removal from the federal court back to Maryland. And so that delayed everything.

THE COURT: All right. Well why don't we do this. Let me - - bear with me. . . . Are we going to need an extension?

[BAR COUNSEL]: Your, Honor, that's what I was going to say is we're very likely going to need an extension any way, and so my preference would be, and I know that I've spoken to [counsel for Respondent] about this briefly earlier in the week, is that we sort of start over as if things had - - as if the petition had just been filed, maybe look at a trial date in December and then get an extension for the trial date and then backtrack the dates for discovery deadline and the like.

(alterations added). Judge Harris chose to conclude discovery within 60 days, by August

8, 2017:

THE COURT: Today is June 8th, I see no reason why discovery should not be completed within 60 days. Everybody in agreement with that?

[BAR COUNSEL]: I am, Your Honor.

THE COURT: Okay. Counsel? []

[COUNSEL FOR RESPONDENT]: It's going to be tight. I know my own schedule and I know what I've got trial wise and everybody else. I think 60 days is pushing it to get everything done that needs to be done.

THE COURT: Well let me tell you, sir, with all due respect we do medical malpractice cases and get them done in 60 days. So it's going to be 60 days.

[COUNSEL FOR RESPONDENT]: I understand. I was asked though, and I'm telling you - -

THE COURT: Well I appreciate it, I appreciate your input.

***

THE COURT: Okay. So we're going to set the discovery deadline for August 8th.

[COUNSEL FOR RESPONDENT]: May I ask a question, Your Honor?

THE COURT: Go ahead, Counsel.

[COUNSEL FOR RESPONDENT]: Is it August date to be filed or August date to be answered and completed?

THE COURT: Everything done.

[COUNSEL FOR RESPONDENT]: Done. Both ways.

THE COURT: So read our DCM policy, because if there's an issue with a motion to compel discovery all of that needs to be recognized short of the 60 days so it can be resolved within 60 days. Okay?

[COUNSEL FOR RESPONDENT]: That's correct. Is the time the same as in the rule 30 days to answer or should we adjust that?

THE COURT: Well that – look at our DCM plan. I mean to answer your question there's two ways to approach it. If we went by the rule you would already be in default for not answering her discovery at this point. . . . That's what the rule says. But because we haven't had the opportunity of the scheduling order yet our DCM plan would kick in and the dates that I'm setting you can get your discovery done well before that.

[COUNSEL FOR RESPONDENT]: I understand, Your Honor, but please understand perhaps I'm in error, but this matter has been under the jurisdiction of the federal court with the [state] court no longer having jurisdiction until recently.

THE COURT: The Attorney Grievance matter was in federal court; is that what you're saying?

9

[COUNSEL FOR RESPONDENT]: Yes. Yes, Your Honor. [] Okay. And our contention was that you couldn't claim a federal case was frivolous when it was pending to be heard by the federal court and you had to await the ruling in the federal court. And the federal court took that under consideration. It took a while with [them] then said, no, send it back just for discipline.

(alterations added).

At the hearing, Judge Harris also inquired as to whether the parties would be calling any expert witnesses:

THE COURT: Any need for experts?

[BAR COUNSEL]: Not on my side, Your Honor.

[COUNSEL FOR RESPONDENT]: I don't know as [of] yet, Your Honor, I'm not sure until we get discovery what they're claiming is frivolous.

The hearing on the matter was set for six days to begin on September 5, 2017. On June 30, 2017, the attorneys representing Rheinstein moved to withdraw whereupon Respondent entered "the appearance of Jason E. Rheinstein, Esq., *pro se*, as counsel for the Respondent[.]"

On July 19, 2017, Bar Counsel filed a Motion for Sanctions and Order of Default, based upon Respondent's failure to answer the Petition within fifteen days of April 22, 2016, the date of its service; his failure to respond to Bar Counsel's interrogatories and requests for production of documents or otherwise to explain his failure to respond or seek a protective order, thus, asking the court to:

(a) Order that the averments in the Petition for Disciplinary or Remedial Action be deemed admitted;
(b) Order the Respondent be precluded from calling any witnesses at trial;
(c) Order the Respondent be precluded from presenting any documents at trial;

10

(d) Order that the Respondent be precluded from presenting any evidence or testimony which contradicts the averments in the Petition for Disciplinary or Remedial Action;

(e) Order that the Respondent be precluded from testifying to any matter other than any alleged mitigation;

(f) Enter an Order of Default against the Respondent in this proceeding;

(g) Direct the Clerk to issue notice pursuant to Rule 2-613(c); and

(h) Grant such other and further relief as the court deems appropriate.

On the following day, Respondent filed a 99-page Answer to the Petition, in which he denied the averments in the Petition by asserting that the actions in the Moore litigation were justified and supplied the following affirmative defenses, albeit without any mention of mitigation:

First Affirmative Defense: Inadequate Notice/Lack of Procedural Due Process

Second Affirmative Defense: Legal Insufficiency/Failure to State a Claim

Third Affirmative Defense: Unclean Hands

Fourth Affirmative Defense: Laches

Fifth Affirmative Defense: Release, Settlement, Accord and Satisfaction

Sixth Affirmative Defense: Implied Consent

Seventh Affirmative Defense: Express Consent

Eight Affirmative Defense: Waiver

Ninth Affirmative Defense: Equal Protection

Tenth Affirmative Defense: Equitable Estoppel

Eleventh Affirmative Defense: Subject Matter Jurisdiction

Twelfth Affirmative Defense: Res Judicata

Thirteenth Affirmative Defense: Collateral Estoppel

11

Fourteenth Affirmative Defense: Duress

(emboldening and underlining removed). Respondent also asserted that he "reserve[d] the right to assert any other defense provided by rule or statute, whether listed herein or not, including, but not limited to, defenses listed in Maryland Rule 2-322 and Maryland Rule 2-323."

Rheinstein, again, requested that the Petition be dismissed. Within days, he propounded his "First Request for Production of Documents" and "First Set of Interrogatories" on Bar Counsel. On August 2, 2017, Respondent also filed an Opposition to Motion for Sanctions and Order of Default, in which he argued that Petitioner's discovery, propounded on April 22, 2016, was "invalid" after he removed the case to the federal court and that Bar Counsel was required to propound new matters in discovery after the case was remanded, such that the failure to do so precluded any discovery violations and attendant sanctions.

On August 3, 2017, Judge Harris, with the parties in chambers, stated that the written scheduling order was ambiguous as it specified only that expert designations were due August 8, 2017, but did not expressly state that all discovery closed August 8, 2017, as he had stated during the hearing on June 8, 2017. Judge Harris, nevertheless, directed that the parties "get discovery done."

On August 9, 2017, the day after which discovery was to be completed, pursuant to the June 8th hearing, Rheinstein filed a Motion for Extension of Time to Complete Expert Designations, stating that he intended to enlist an expert to opine that the pleadings he filed in the Moore case were not frivolous, as alleged in the Petition. In that motion, Rheinstein

12

expressed his need for additional time for discovery, as he proffered his need to review the transcripts from a recent deposition of an Attorney Grievance Commission member which he had not received; his motion, however, was denied on September 1, 2017.  By order dated August 14, 2017, Judge Harris, however, had denied Bar Counsel's Motion for an Order of Default against Respondent, because of the Answer filed on July 20, 2017, although the Judge also stated that Petitioner's Motion for Sanctions would be addressed at trial.  On August 21, 2017, Bar Counsel provided Respondent her Answers to Interrogatories and Responses to Request for Production of Documents.  On August 23, 2017, Respondent filed a Motion for Clarification of Scheduling Order Deadline, which Judge Harris denied.

Respondent, nevertheless, just days before trial was set to begin, on September 2, 2017, filed a second Notice of Removal in the United States District Court for the District of Maryland, arguing that the second removal differed from the first based upon Bar Counsel's responses to his interrogatories and requests for production,[11] which allegedly necessitated removal and thus, obviated the need for the state court hearing; in language alleging an "illicit strategy" on behalf of Bar Counsel, Rheinstein contended that:

---

[11] As authority for the second removal, Respondent cited 28 U.S.C. § 1446(b)(3), which provides:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

13

This Court should not decline to exercise its jurisdiction over any claims in this matter because (1) jurisdiction is mandatory in cases properly removed under 28 U.S.C. § 1442; (2) [Bar Counsel]'s discovery responses (contrary to what it previously asserted) conclusively establish that it is attempting to try the merits of Qui Tam I, currently still pending before this Court, in the State Court Proceeding; (3) documents produced by [Bar Counsel] suggest this action was primarily brought to undermine [Respondent]'s ability to pursue the case still-pending before this Court; and very significantly, (4) [Bar Counsel] has brought exceedingly vague and broad allegations in this case as part of an illicit strategy on the part of one of its employees, Lydia E. Lawless, to exploit the state court procedural rules in a manner that has the practical effect of rendering the notice requirements of due process nugatory and ineffectual.

On September 5, 2017, the day on which the hearing was scheduled to begin, Bar Counsel filed in the federal court an Emergency Motion for Remand for Lack of Federal Jurisdiction, which that court granted on September 20, 2017. Respondent, however, thereafter, noted an appeal in the United States Court of Appeals for the Fourth Circuit; this Court, in response to a consent motion of the parties, stayed the instant proceedings "pending final disposition by the United States Court of Appeals for the Fourth Circuit."

On February 5, 2019, the United States Court of Appeals for the Fourth Circuit, in an unpublished per curiam opinion,[12] affirmed the district court decision to remand the case to the state court; and on May 17, 2019, this Court granted Bar Counsel's Motion to Lift Stay and For Appropriate Relief. The matter was then assigned to Judge Glenn L. Klavans of the Circuit Court for Anne Arundel County, upon the retirement of Judge Harris. We ordered that a hearing on the matter be held as soon as possible, within sixty days of our

---

[12] *Attorney Grievance Comm'n v. Jason Edward Rheinstein*, 750 F. App'x 225 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 226 (2019).

14

May 17th order, noting that "discovery in the Circuit Court was concluded in August 2017."

On June 10, 2019, new counsel entered an appearance as counsel for Respondent. On June 5, 2019, counsel for Respondent emailed Bar Counsel stating that Respondent would require "4 to 5 days for the defense case," to which Bar Counsel emailed a response, stating that, "I'm not sure how you will use 4-5 days as Mr. Rheinstein never responded to discovery identifying any witnesses or individuals with personal knowledge or designated an expert. . . . Please immediately notify me of your intended witnesses."

On June 6, 2019, counsel for Rheinstein replied, advising that, "[a]t present, we've identified a number of people with personal knowledge that might be called at trial," listing mainly individuals involved with the underlying litigation, including Lydia Lawless, Bar Counsel, and concluding that, "[t]he above list is preliminary and does not include our client of course, expert witnesses, and other potential witnesses."

Judge Klavans, on June 6, 2019, scheduled a hearing on the matter to take place over the course of six days beginning on July 1, 2019.

On June 12, 2019, Bar Counsel filed a Motion for Sanctions and/or Motion in Limine, reiterating the reasons set forth in the 2017 Motion for Sanctions and Order of Default, asking that the circuit court:

A. Grant Petitioner's Motion for Sanctions and/or Motion in Limine;
B. Order that the averments in the Petition for Disciplinary or Remedial Action be deemed admitted;
C. Strike Respondent's Answer to the Petition for Disciplinary or Remedial Action;
D. Order the Respondent be precluded from calling any witnesses at trial;

15

E. Order the Respondent be precluded from presenting any documents at trial;

F. Order that the Respondent be precluded from presenting any evidence or testimony which contradicts the averments in the Petition for Disciplinary or Remedial Action; and

[G]. Grant such other and further relief as the court deems appropriate.

(alteration added).

On the following day, Rheinstein served Bar Counsel with "Respondent's Answers to Petitioner's Renewed First Set of Interrogatories" and "Respondent's Response to petitioner's Renewed First Request for Production of Documents, Electronically-Stored Information and Property."[13]  In one of his responses, Respondent provided an extensive list of individuals he intended to call as non-expert witnesses at the hearing:

> Individuals with discoverable information include the parties and attorneys involved in the case identified in Table 2 of **EXHIBIT 1**, which is incorporated by reference.  Such individuals also include the persons who served as investigators on behalf of the Petitioner and subject to the Touhy regulations,[14] the various federal officials who were assigned to investigate the real estate transactions in the underlying cases.
>
> ***
>
> Each of the individuals identified has information relating to the case(s) or related matter(s) (such as real estate transactions, etc.) for which he or she was a party, an attorney, or an investigator.  Pursuant to Maryland Rule 2-421(c), the identities of additional persons may be derived from the documents identified in the Table of Contents of each of the indexed volumes listed in **EXHIBIT 2**, attached hereto.  Each of the volumes listed in Exhibit 2 was previously provided to the Petitioner in the present litigation.  Please

---

[13] The responses were to Bar Counsel's discovery requests originally propounded on April 22, 2016.  Bar Counsel did not serve any other additional discovery requests.

[14] *Touhy* regulations refer to "[h]ousekeeping regulations that create agency procedures for responding to subpoenas[.]"  *COMSTAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 272 n.3 (4th Cir. 1999) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L.Ed. 417 (1951)).  "In *Touhy* the Court ruled that agency employees may not be held in contempt for refusing to answer a subpoena, if prohibited from responding by a superior."  *Id.* (citing *Touhy*, 340 U.S. at 468, 71 S. Ct. 416).

also see Respondent's 99-page Answer to the PDRA filed in the Circuit Court for Anne Arundel County on July 20, 2017, Respondent's Corrected Opening Brief of Appellant filed in the United States Court of Appeals for the Fourth Circuit on May 11, 2018, Respondent's Corrected Reply Brief of Appellant filed in the United States Court of Appeals for the Fourth Circuit on January 14, 2019, and Respondent's filings in the United States District Court for the District of Maryland in the removal cases[.]

With respect to expert witnesses, Respondent responded that:

> The Respondent expects to call Douglas Bergman, Esquire as an expert witness at trial. . . . Mr. Bergman . . . has been practicing law since 1974 and is expected to testify about the matters at issue in this case. It is anticipated that Mr. Bergman, based upon his review of certain materials, his education, review of the applicable ethical rules, and experience as a lawyer will testify generally about the matters as set forth in the AGC's Petition for Disciplinary or Remedial Action ("PDRA") and rebut the assertions made by the Petitioner against the Respondent in the PDRA. It is anticipated that Mr. Bergman will testify and offer opinions about the reasons why the filings and other materials referenced in the PDRA as being frivolous were not frivolous. It is anticipated that Mr. Bergman will testify and offer opinions about the communications mentioned in the PDRA that are characterized as "Respondent's Continued Threats and Abusive Behavior." All of Mr. Bergman's opinions will be offered to a reasonable degree of legal certainty. Respondent is also endeavoring to locate a mental health expert to opine on Respondent's attention deficit disorder ("ADHD") disability and why it was the root cause of certain matters at issue in the PDRA, including the communications characterized as "Respondent's Continued Threats and Abusive Behavior." The Respondent reserves the right to supplement this and all other discovery responses.

In response to Bar Counsel's inquiry as to whether Respondent intended to contend that "an injury, disability or illness of physical, mental or emotional nature caused or contributed to the circumstances described in and upon" which the PDRA is based, to state the facts upon which he would rely to establish that connection and list any individuals who have investigated "the cause or circumstances of the matter(s)" described in the PDRA, Rheinstein responded that he

17

> intends to offer evidence that he suffers from a disability, attention deficit hyperactivity disorder ("ADHD"), which, among others, negatively impacts impulse control and that his ADHD is the root cause of some of the matters at issue in the PDRA, including the communications labeled "Respondent's Continued Threats and Abusive Behavior."
>
> ***
>
> The Respondent's counsel have investigated the matter on his behalf. The Respondent also retained an expert witness as detailed above, and plans to designate a mental health expert as well as detailed above.

Lastly, with respect to Bar Counsel's inquiry as to which, if any, factors in mitigation Respondent planned to proffer at the hearing, Respondent objected, stating that this interrogatory "specifically seeks information protected by the work-product doctrine," and listed the mitigation factors adopted by this Court, stating that he "also reserves the right to supplement this answer and introduce evidence regarding additional mitigating factors as the list [] is not exhaustive."

In Respondent's Response to Petitioner's Renewed First Request for Production of Documents, Electronically-Stored Information and Property, Rheinstein contended that he was under no obligation to disclose further documents, arguing that, for many of the requests, a privilege existed which barred disclosure, or referred Bar Counsel to documents "provided in electronic form by Respondent Jason Rheinstein to Petitioner Attorney Grievance Commission" in 2017 and 2018.

On June 24, 2019, Respondent filed an Opposition to Petitioner's Motion for Sanctions and/or Motion in Limine, arguing that any request for discovery sanctions should be denied because, "[t]here was no failure of discovery since the Pre-Removal Discovery Requests did not survive the first removal of this case, and the Petitioner never renewed its discovery requests until it filed its" most recent motion for sanctions. Rheinstein also

18

argued that sanctions should be denied because Bar Counsel "failed to make any good faith efforts to resolve any perceived discovery dispute."

Respondent further contended that sanctions were not warranted because Bar Counsel had not been prejudiced by the discovery violation as, in Rheinstein's opinion, it "now has all the information it was seeking since the Respondent promptly answered the requests after Petitioner renewed them through its" Motion for Sanctions and/or Motion in Limine. Counsel for Rheinstein, thereupon, also filed a Motion for a 60-Day Continuance of the hearing in this Court, seeking additional time to conduct discovery based upon the fact that counsel "were retained to defend the case 14 days ago" and that key witnesses were not available to testify at the hearing as scheduled and that Respondent "wish[ed]" to present expert testimony, including medical expert testimony in mitigation." This Court denied the motion.

On the same day, Bar Counsel filed a Supplement to Petitioner's Motion for Sanctions and/or Motion in Limine, arguing further reasons as to why Rheinstein should be precluded from proffering evidence, stating, in part:

> In response to the Interrogatories the Respondent stated for the first time during the three years this case has been pending, his intention to offer his purported ADHD diagnosis as a defense/mitigation. As noted above, the Respondent has failed to designate any expert to testify in support of the proposed defense and/or mitigation and the Petitioner has been precluded from doing any discovery into the Respondent's diagnosis, medical history, symptoms, or causal connection. Similarly, the Petitioner has been precluded from obtaining an independent medical evaluation of the Respondent during discovery. Additionally, the Respondent has failed to produce any documents associated, in any way, with his purported diagnosis.
> In response to the request for information regarding the particular factors in mitigation that he intends to prove at trial, the Respondent, rather

19

than providing a response, merely recites the factors recognized by the Court of Appeals.

The Petitioner will be prejudiced if the Respondent is permitted to present evidence in mitigation or any medical evidence related to a defense or mitigation as the Petitioner has been precluded from doing any discovery related to any facts he intends to prove at trial. The failure to provide discovery related to his defenses and/or mitigation is prejudicial as it impedes the Petitioner's ability to challenge or cross-examine the evidence or witness(es) or obtain an independent evaluation.

On June 27, 2019, Judge Klavans granted Bar Counsel's Motion for Sanctions and request for default, resulting in the admission of the averments in the Petition, striking Rheinstein's Answer to the Petition, precluding Respondent from calling any witnesses at any hearing, precluding Respondent from presenting any documents at any hearing and precluding Respondent from presenting any evidence or testimony which would contradict the averments contained in the Petition,[15] reasoning that:

---

[15] When Judge Klavans granted Petitioner's Motion for Sanctions and/or In Limine, filed on June 12, 2019, his order did not conflict with Judge Harris's denial of Petitioner's Motion for Sanctions and Order of Default, filed on July 19, 2017, because Judge Harris denied the motion on the basis that Respondent had filed an Answer to the Petition, but also preserved the issue of sanctions to be heard on September 5, 2017, at the hearing on the merits. That hearing never took place because Rheinstein filed his second removal action. Once the disciplinary matter had been remanded to the court in 2019, Rheinstein for the first time indicated that he intended to proffer evidence in mitigation. Bar Counsel in response argued in its Supplement to Petitioner's Motion for Sanctions and/or Motion In Limine that Rheinstein should not be able to proffer mitigation based upon his earlier failure to disclose any factors in mitigation. After considering Petitioner's Motion for Sanctions and Order of Default, Petitioner's Motion for Sanctions and/or Motion in Limine, Supplement to Petitioner's Motion for Sanctions and/or Motion in Limine, Respondent's Opposition to Petitioner's Motion for Sanctions and/or In Limine, filed June 24, 2019, and upon review of the record, Judge Klavans granted Petitioner's Motion for Sanctions and/or Motion In Limine. The order deemed admitted all factual averments set forth in the Petition, struck Rheinstein's Answer and entered a judgment of default, which found that the Rules of Professional Conduct had been violated as alleged in the Petition. As a result, Judge Klavans' order did not contravene Judge Harris' order.

[T]he Respondent failed, after proper service, to respond to, or supplement, in a timely manner Petitioner's First Set of Interrogatories, and Petitioner's First Request for Production of Documents, Electronically Stored Information and Property.

The actions of the Respondent, as evidenced by his failure to respond to or supplement discovery requests, without excuse, was purposeful and willful. Respondent, through previous counsel and then *pro se*, engaged in a course of conduct designed to be dilatory, including but not limited to his failure to provide discovery, and two removals of this action to the federal courts that were summarily remanded to this Court (the second of which was affirmed by the 4th Circuit U.S. Court of Appeals).

The stay in this matter was lifted by the Court of Appeals on May 17, 2019. Yet, Respondent continued to fail to respond to the pending discovery requests. The Court finds that Respondent's counsel's email to Bar Counsel attempting to informally provide possible witness names, including an expert witness, for the first time on June 6, 2019, a mere 26 days prior to the scheduled hearing, more than three years after discovery was propounded, and clearly after the discovery deadline in August, 2017, was the very first glimmer of compliance with the discovery rules. It was too little and much too late.

Finally, Respondent's willful and deliberate course of conduct to subvert the discovery process is also clearly demonstrated from the styling of Respondent's eleventh-hour responses to the discovery requests: "Respondent's Answers to petitioner's ***Renewed*** First Set of Interrogatories" (emphasis added), and "Respondent's Response to Petitioner's ***Renewed*** First Request for Production of Documents, Electronically-Stored Information and Property" (emphasis added), were served upon Petitioner on June 13, 2019. Petitioner's discovery requests were not renewed. To the contrary, they had been propounded on April 22, 2016.

The Court further finds that Respondent made no good faith effort to resolve this discovery dispute. To the contrary, Respondent's position that Petitioner's discovery requests had been somehow nullified by virtue of his removal of the matter to Federal court is unsupported in law. The Respondent sought no protective order therefore. As such, it clearly indicative of dilatory and willful conduct.

Respondent's failures of discovery severely prejudices the Petitioner by preventing Petitioner to learn the identity of Respondent's witnesses, including expert witnesses, reviewing Respondent's documentary evidence, both as to facts and mitigation, conducting discovery thereon and properly preparing for the hearing scheduled in this matter, especially in light of the time limitations imposed by law on the timely conduct of attorney disciplinary hearings, as reflected in the Scheduling Order entered in this matter.

21

It is therefore:

> **Ordered,** Petitioner's Motion for Sanctions and/or Motion In Limine is **GRANTED**. All factual averments set forth in the Petition for Disciplinary or Remedial Action are deemed admitted; the Respondent's Answer to the Petition for Disciplinary or Remedial Action is hereby **STRICKEN** and **JUDGMENT BY DEFAULT** is entered against the Respondent and in favor of the Petitioner, finding that the Rules of Professional Conduct have been violated as alleged in the Petition for Disciplinary or Remedial Action; and it is further
>
> **ORDERED**, that Petitioner is directed to file Proposed Findings of Fact and Conclusions of Law. This Court will conduct a hearing for the purpose of argument only from the parties on such Proposed Findings of Fact and Conclusions of Law, commencing July 1, 2019[.]

Rheinstein, then, filed a motion to reconsider Judge Klavans' order or, "Alternatively, Motion to Alter or Amend Judgment or, Alternatively, Motion to Vacate Default Judgment," arguing, that the default judgment against him was not appropriate based, in part, upon the fact that he "suffers from ADHD, which caused him to struggle with deadlines and require additional time to complete routine tasks."

On July 8, 2019, Bar Counsel, as directed by Judge Klavans, filed Proposed Findings of Fact and Conclusions of Law. On July 10, 2019, Judge Klavans held a hearing on Respondent's Motion for Reconsideration and denied it, affirming the July 3rd order of default. At that same hearing, Judge Klavans also heard arguments on Petitioner's proposed Findings of Fact and Conclusions of Law. On August 8, 2019, Rheinstein filed a Motion to Supplement the Record for Further Relief and requested a hearing, asking the circuit court to reject Bar Counsel's proposed conclusions of law based upon their reliance on emails sent by the Respondent in connection with the underlying litigation, "take judicial notice of the publicly-accessible records of the underlying litigation" and allow

him to submit a response to Bar Counsel's Proposed Findings of Fact and Conclusions of Law. Judge Klavans denied Rheinstein's requests.

On August 19, 2019, Judge Klavans issued his Findings of Facts based upon the allegations as admitted and concluded that Rheinstein violated Rules 1.1, 3.1, 3.4, 4.4 and 8.4.[16]

## DISCOVERY SANCTIONS

In the instant matter, Judge Klavans found various discovery violations committed by Rheinstein and imposed sanctions which resulted in the admission of the averments in the Petition by Respondent, the striking of Rheinstein's Answer to the Petition and the inability of the Respondent to present testimony, including that of experts.

In attorney grievance matters, we recognize that the hearing judge, generally, "is entrusted with the role of administering the discovery rules and, as such, is vested with broad discretion in imposing sanctions when a party fails to comply with the rules." *Attorney Grievance Comm'n v. Barton*, 442 Md. 91, 120, 110 A.3d 668, 685 (2015) (quoting *Attorney Grievance Comm'n v. O'Leary*, 433 Md. 2, 28–29, 69 A.3d 1121, 1137 (2013) (internal citation omitted)). We, thus, review the hearing judge's decision to impose discovery sanctions for an abuse of discretion. *Id.*; *Attorney Grievance Comm'n v. Kent*, 447 Md. 555, 576, 136 A.3d 394, 407 (2016).

Once a circuit court judge is assigned to oversee the disciplinary matter, the judge is required to "enter a scheduling order" which "shall define the extent of discovery and

---

[16] Bar Counsel had withdrawn the Rule 3.2 allegation.

23

set dates for the completion of discovery, designation of experts, the filing of motions, and a hearing on the petition," within "15 days after the date on which the answer is due, and after consultation with Bar Counsel and the attorney[.]" Md. Rule 19-722(a). The rules governing the attorney grievance process further provide that, once "a Petition for Disciplinary or Remedial Action has been filed, discovery is governed by Title 2, Chapter 400, subject to any scheduling order entered pursuant to Rule 19-722." Md. Rule 19-726.

Pursuant to Rule 2-421(b), the party to whom interrogatories are directed "shall serve a response within 30 days after service of the interrogatories or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later." Rule 2-422(c) also provides the same deadlines for responses to requests for production or inspection of documents, electronically stored information and property. Where a party fails to comply with the response requirements for interrogatories and requests for production, Rule 2-432(a) permits the discovering party to move for sanctions without first filing a motion to compel discovery:

> (a) **Immediate sanctions for certain failures of discovery.** A discovering party may move for sanctions under Rule 2-433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of a party or a person designated under Rule 2-412(d) to testify on behalf of a party, fails to appear before the officer who is to take that persons' deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2-421 or to a request for production or inspection under Rule 2-422, after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2-403.

Bar Counsel, having propounded interrogatories and requests for production on April 22, 2016, and not having received responses until June 13, 2019, well after the

timeline provided for by the rules, moved for the imposition of sanctions on two separate occasions. When a party moves for sanctions pursuant to Rule 2-433(a), "the court, if it finds a failure of discovery," may enter sanctions "as are just" against the noncomplying party, including:

> (1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;
> (2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or
> (3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over the party. If, in order to enable the court to enter default judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

In the present action, Judge Klavans' decision to deem the Petition's averments as admitted and preclude witnesses from testifying, including experts, on behalf of the Respondent, was consistent with our jurisprudence. In *Attorney Grievance Commission v. Kent*, 447 Md. 555, 136 A.3d 394 (2016), Kent committed a number of discovery violations in his disciplinary matter, including being late to file an Answer to the Petition for Disciplinary or Remedial Action and to failing to respond to Bar Counsel's interrogatories and requests for production. At the scheduling conference in *Kent*, Bar Counsel and counsel for Kent agreed upon a deadline by which to have discovery complete, which included Kent's responses to Bar Counsel's interrogatories and requests for production of

25

documents.  Based upon Kent's failure to meet that deadline, Bar Counsel filed a Motion for Sanctions for Failure of Discovery and a Motion to Shorten Time for Respondent to Respond, positing that "Respondent's failure to provide written discovery greatly prejudice[d] the ability of Petitioner's counsel to prepare to take Respondent's deposition" and, "[g]iven the short period of time allowed to conduct discovery prior to trial in disciplinary matters, compliance with discovery requirements and deadlines is imperative." *Id.* at 560, 136 A.3d at 397 (alterations in original).

The hearing judge granted Bar Counsel's Motion to Shorten Time to Respond and ordered that Kent provide a response by a date certain.  When no response was received by that date, the hearing judge imposed sanctions against Kent, which included admitting the averments in the Petition for Disciplinary or Remedial Action, striking Kent's Response to the Petition for Disciplinary or Remedial Action, precluding Kent from calling any witnesses or presenting any documents at the hearing on his alleged misconduct and prohibiting him from presenting any mitigation among other matters.

Kent then filed a Response to Petitioner's Motion for Sanctions and a Motion to Reconsider, positing that he had failed to respond to Bar Counsel's requests in a timely manner, because his attorney had been out of the office and he had been out of the state, of which the hearing judge denied.  At the subsequent hearing on Kent's alleged misconduct, Kent argued about the discovery sanctions again, asserting that his counsel had been negligent.  The judge denied the motion for reconsideration, again, finding that he failed to provide a "compelling reason to further delay these proceedings that are . . . on a very tight

timeline pursuant to the rules," and Kent proceeded *pro se*. *Id.* at 561, 136 A.3d at 398 (omission in original).

Following the hearing, Kent again filed a Motion for Reconsideration and for Appropriate Relief, alleging that his previous attorney was incompetent and that he had participated in his deposition and "provided Answers to Interrogatories and produced many of the requested records," after the hearing judge's imposition of sanctions. *Id.* at 562, 136 A.3d at 398.

In language prescient to the instant matter, the hearing judge denied Kent's Motion for Reconsideration:

> Respondent's discovery violations are severe, substantial and ongoing. To date, Respondent has yet to fully respond to the discovery served upon him on July 10 and July 17, 2015. Respondent proffers that he is "in the process of having reconciliations performed for his IOLTA and Trust bank accounts by an accounting/bookkeeping professional. Respondent anticipates that these reports will be completed, and made available to Bar Counsel within the next twenty (20) days." [] However, Respondent has had formal notice of these proceedings for nearly five months—since May 20, 2015—and actual notice of bar Counsel's inquiry for many months more. Any reconciliation of Respondent's banking accounts in preparation for these proceedings should [have] been initiated, at a minimum, before the scheduled hearing date in this matter.
>
> Respondent initially claimed that his discovery failures were due to his counsel's failure to send him the discovery requests in a timely fashion; however, three months after those requests were served, discovery is still not complete. This court found Respondent's explanation for his discovery violations incredible at trial and the scant proof offered by Respondent to bolster this claim supports the court's conclusions. [] This court and Petitioner have both been severely prejudiced by Respondent's discovery failures which continue to the date of this opinion and are anticipated to continue, by Respondent's own estimate, through the filing date of this court's findings of fact and conclusions of law. Therefore, the prejudice suffered by Petitioner, this court and Maryland's Court of Appeals due to

27

Respondent's continued delay will not be cured by a simple continuance or postponement of this matter.

*Id.* at 562–63; 136 A.3d at 398–99 (footnote omitted) (alterations added).

Before us, Kent argued that the hearing judge abused her discretion in imposing discovery sanctions based upon his attorney's failure to timely provide him with the discovery requests propounded by Bar Counsel. He also contended that such "draconian" sanctions should be "reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court," which, he contended, his did not. *Id.* at 575–76, 136 A.3d at 406 (internal citations omitted).

Of importance to the instant case, we held that the hearing judge appropriately exercised her discretion in imposing the discovery sanctions against Kent. Not only did we emphasize that Kent's discovery responses were either incomplete or untimely and that his reason for not responding was "incredible," but also that Bar Counsel had been prejudiced by the delay; we also noted that Kent's violations persisted throughout the proceedings, demonstrating a lack of good faith in attempting to remedy any issues regarding discovery before they came due or otherwise productively cooperating with the discovery process. In so doing, we affirmed not only the sanction of the admission of all averments in the petition in accordance with *Attorney Grievance Commission v. Steinberg*, 395 Md. 337, 910 A.2d 429 (2006), *Attorney Grievance Comm'n v. O'Leary*, 433 Md. 2, 69 A.3d 1121 (2013), *Attorney Grievance Commission v. Thomas*, 440 Md. 523, 103 A.3d 629 (2014), for example, but also, for the first time, precluded an attorney from offering mitigation, which also is the import of having precluded experts in the instant matter.

28

Initially, we note that with respect to the deemed admissions in the instant matter, Rheinstein's discovery violations are more egregious than Kent's. Rheinstein provided responses to Bar Counsel's interrogatories and requests for production nearly 37 months after they had been served upon him and nearly 22 months after discovery had become due, as established by Judge Harris in June of 2017, and merely 26 days prior to the hearing scheduled by Judge Klavans. Judge Klavans found Respondent's untimely response to be "too little and much too late," noting that:

> Respondent's counsel's email to Bar Counsel attempting to informally provide possible witness names, including an expert witness, for the first time on June 6, 2019, a mere 26 days prior to the scheduled hearing, more than three years after discovery was propounded and clearly after the deadline in August 2017, was the very first glimmer of compliance with the discovery rules. It was too little and much too late.

> Respondent's willful and deliberate course of conduct to subvert the discovery process is also clearly demonstrated from the styling of Respondent's eleventh-hour formal responses to discover requests: "Respondent's Answers to Petitioner's *Renewed* First Set of Interrogatories" (emphasis added), and "Respondent's Response to Petitioner's *Renewed* First Request for Production of Documents, Electronically-Stored Information and Property" (emphasis added), which were served upon Petitioner on June 13, 2019, 19 days before the scheduled hearing. Petitioner's discovery requests were not renewed. To the contrary, they had been propounded on April 22, 2016.

(italics and emboldening in original).

Judge Klavans also found Rheinstein's reason for the violation—his contention that removing it to federal court negated discovery obligations in state court—lacked any basis in the law. He further noted that Respondent's 99-page Answer and 12,000-page "document dump" served on Bar Counsel in the summer of 2017 did little to provide Bar Counsel with "adequate notice of defenses, potential witnesses and documents," and put

29

the burden on Petitioner to answer her own interrogatories and requests for production. Judge Klavans additionally found that Bar Counsel was "greatly prejudiced" by Respondent's discovery failures, which, if left unchecked, would have operated to reward Respondent for "his willful and deliberate conduct in avoiding discovery." Neither a postponement nor continuance, as Judge Klavans found, could remedy the prejudice both Bar Counsel and the court faced.

As a result, deeming the averments admitted was within Judge Klavans' discretion.[17]

Judge Klavans also precluded the presentation of experts because of Rheinstein's discovery violations. A few weeks before the hearing scheduled by Judge Klavans was to take place, at which the parties would present arguments about Bar Counsel's Proposed Findings of Fact and Conclusions of Law, counsel for Rheinstein, in a motion opposing the

---

[17] Rheinstein argues that some of the averments in the Petition were conclusory (*i.e.*, "frivolous") and, thus, were unable to be admitted. Certainly, in *Attorney Grievance Commission v. Kent*, we deemed admitted conclusory statements that included words such as "knowingly" and "intentionally," 447 Md. 555, 565, 136 A.3d 395, 400 (2016), and "incompetently" in *Attorney Grievance Commission v. Thomas*, 440 Md. 523, 532, 103 A.3d 629, 634 (2014). It may not be appropriate in many cases to sanction a party who has committed a discovery violation by deeming that party to have admitted the ultimate issue in the case and essentially defaulted the case. Nevertheless, in the context of this case, Rheinstein fails to articulate why summary statements, that "[e]xpress[] a factual inference without stating the underlying facts on which the inferences is based," *Conclusory*, Black's Law Dictionary (11th Ed. 2019), should be treated differently than other factual averments admitted as a result of a discovery sanction. He erroneously relies on *Attorney Grievance Commission v. Dyer*, 453 Md. 585, 162 A.3d 970 (2017), a case in which no discovery sanctions had been imposed and the hearing judge found, after conducting a full-blown evidentiary hearing, that particular filings made by the respondent in the underlying litigation subject of his alleged misconduct had not been frivolous as alleged by Bar Counsel; *Dyer* is inapposite.

30

court's discovery sanctions, proffered, for the first time, that had he been permitted to present evidence, he would have called Dr. Richard Ratner, a psychiatrist and expert witness, to testify that Rheinstein's diagnosis of attention deficit hyperactivity disorder ("ADHD") contributed to the alleged misconduct such that it should be treated as a mitigating factor.

With respect to the preclusion of expert testimony as a sanction for discovery violations, we look to *Rodriguez v. Clarke*, 400 Md. 39, 926 A.2d 736 (2007), a medical malpractice case. In *Rodriguez*, the Clarkes had failed to arrange for depositions of their expert witnesses, even up to two weeks before trial. The trial judge had granted the defendants' motion for summary judgment, because of the Clarkes' failure to produce an expert. We approved of the preclusion of expert witnesses on behalf of the Clarkes, based upon their failure to properly identify their expert witnesses in their preliminary expert designation, their cross-refences to those inadequate expert designations in each of their answers to interrogatories and their "continuous failure to cooperate with [the defendants'] repeated request for dates of depositions of their experts, especially out-of-state witnesses." *Id.* at 68, 926 A.2d at 753. We emphasized that the Clarkes' action "evidenced a complete lack of good faith in providing access to the discoverable information" which "continu[ed] as it did so close to the scheduled trial date[.]" *Id.* (alterations added) We found no abuse of discretion in "the trial court's decision to preclude all of the Clarkes' expert witness testimony as a sanction for failure to comply with discovery[.]" *Id.* (alteration added).

Just as in *Rodriguez*, Judge Klavans also appropriately acted within his discretion in precluding Rheinstein from offering expert testimony, as a sanction for his discovery violations.

It is also important to note that Rheinstein did not proffer a deposition of an expert as to the impact of his ADHD until late June of 2019.[18] Rheinstein's medical expert in psychiatry, Dr. Richard A. Ratner, also was only offered to opine on the effect of ADHD on Rheinstein's impulsivity, which, as we shall see does not form a basis for his Rule 8.4 violations *infra*.[19]

---

[18] Rheinstein first made mention of a medical expert in his Answers to Petitioner's Renewed First Set of Interrogatories, filed on June 12, 2019, stating that he was "endeavoring to locate a mental health expert to opine on Respondent's attention deficit hyperactivity disorder ("ADHD") disability and why it was the root cause of certain matters at issue in the [Petition], including the communications characterized as "Respondent's Continued Threats and Abusive Behavior."

In Respondent's Motion for a 60-Day Continuance of the Trial Scheduled to Begin July 1, 2019, filed on June 24, 2019, Respondent first identified Dr. Richard A. Ratner as an expert who "can provide probative evidence to the Court concerning the medical condition" and "can provide a report promptly, but Respondent recognizes that discovery regarding Dr. Ratner may be warranted upon preparation of this report."

On July 3, 2019, Respondent filed a Motion to Reconsider this Court's Order of June 27, 2019 or Alternatively Motion to Alter or Amend Judgment, or Alternatively, Motion to Vacate Default Judgment and Request for Hearing, which proffered that Rheinstein "suffers from ADHD, which caused him to struggle with deadlines and require additional time to complete routine tasks."

As an exhibit to the July 3, 2019 motion, Respondent attached a letter from Dr. Ratner, a psychiatrist who purportedly would have been called as an expert witness at the evidentiary hearing had one taken place, to counsel for Respondent detailing the results of a psychiatric evaluation he performed of Respondent.

[19] In Dr. Ratner's letter to counsel for Respondent, he stated that he had conducted the evaluation "to determine whether there was a mental health condition that contributed to the behavior in question and whether, if so, he is or is not mentally competent to continue

(continued . . .)

32

practicing law." Dr. Ratner had examined Respondent "for a total of four hours." During that time, he "administered a standard checklist for ADHD symptoms, on which he scored well into the range of ADHD sufferers." Dr. Ratner opined as to the effects Rheinstein's diagnosis of ADHD had on his conduct as an attorney:

> In terms of whether Mr. Rheinstein suffers from a mental disease or disorder, I find myself concurring with all the specialists who have treated him since elementary school that he indeed suffers from Attention Deficit Hyperactivity Disorder (ADHD), of the Inattentive and Impulsive Type. His history is replete with evidence of this condition and its treatment.

> I also feel that he displays certain elements of Obsessive Compulsive Personality, though I do not believe he meets full criteria for the Disorder. It appears that he is extremely devoted to work and productivity, sometimes to the exclusion of other activities, and strives for control in a way that can be perfectionist and overly inflexible about, for example, morality and values.

> I do not feel that Mr. Rheinstein is in any way impaired cognitively, including his understanding of the law. He is in fact a very bright individual, and as is sometimes the case with very bright individuals, they find ways to get around or compensate for the inherent difficulties of coping with an attentional diagnosis, sometimes throughout most of their lives.

> Often a time arises, however, which might be a result of new interpersonal or occupational challenges, when the usual coping mechanisms may fail to contain elements of the underlying disorder, with the result that one may experience behavioral or emotional dysfunction.

> Thus I agree that in the parlance you used, Mr. Rheinstein's mental difficulties were a root cause of the behavior that got him into trouble. The combination of his hyper focused tendencies, his loss of perspective regarding the inappropriate nature of his behavior, with the obsessional, inflexible and perfectionistic pursuit of being a whistleblower came together in his involvement with this case. Adding to this, he had, in fact, done very little litigation and he recalled that the prospect of litigating the Moore case caused him constant anxiety. This likely was part of the reason for his attempts to push for settlement of the case.

> However, after these several years of being involved in this grievance

procedure and taking counsel from you, it is also clear that Mr. Rheinstein has gained insight into his past behavior and more clearly recognizes it for what it was.

He has made this clear to me during our interview. He also recognizes that for him to be practicing solo could present stresses similar to what this litigation unleashed. For that reason, he is planning to search for a salaried job, possibly in law-related but not necessarily typical law firms.

He also agreed with my suggestion that he should resume mental health therapy. This would include psychotherapy and at least a consultation regarding medication, in order to prevent such a series of events from occurring in the future. Treatment would not be required for him to practice law as such but will be helpful in occasional circumstances when his issues would benefit from discussion and perspective.

In summary, I do not think that Mr. Rheinstein is in any way incompetent psychologically or cognitively to practice law. As to whether a period of being suspended would be of any value to him or the Bar, I do not think so in either case. The education, so to speak, that he received in the last several years regarding his behavior in 2011-2012, has, in my view, achieved the objectives of gaining him insight and causing adequate reflection on his past behavior.

He has no current intention of re-entering the world of litigation and plans to take a position where he will be able to benefit from the external structure of the institution where he will be practicing.

He agrees that further mental health counseling, with or without medication, would be beneficial for him and intends to pursue this plan.

Further, at the July 10, 2019 hearing on Petitioner's Motion for Sanctions and/or Motion In Limine and Petitioner's Proposed Findings of Fact and Conclusions of Law, counsel for Respondent made several remarks regarding Rheinstein's ADHD and its purported nexus to the alleged rule violations and his failure to comply with Judge Harris's discovery schedule:

[COUNSEL FOR RESPONDENT]: [A]nd there is no doubt that his ADHD affected him. It's why he has trouble with deadlines. It's why his pleadings

(continued . . .)
are so long and Ms. Lawless knew this before I even got into the case.

\*\*\*

[COUNSEL FOR RESPONDENT]: So this is a technical not a substantial violation in the grand scheme. The timing of the disclosures, July of 2017. The reason. Two, number one, I don't agree that there's been a violation and I'll get into that a little bit, but the second, he is obviously affected by his ADHD.

\*\*\*

[COUNSEL FOR RESPONDENT]: [A]nd he suffers from ADHD which causes him to struggle with deadlines, requires time to complete additional tasks, and is the root cause of much of what he does.

\*\*\*

[COUNSEL FOR RESPONDENT]: But I think, again, that's - - I think it's something where it would have benefited the Court to hear . . . from Mr. Ratner who is the mental health expert in this case whose going to testify[] about the ADHD suffered by Mr. Rheinstein and the reason why it's the root cause of all of the claims that are at issue in this case. I think it would have benefitted the Court to hear from both of those experts.

\*\*\*

[COUNSEL FOR RESPONDENT]: He has a good faith basis to believe that there is a fraud scheme because there was one and he's riled up, especially when you consider the fact that he suffers from the ADHD.

\*\*\*

[COUNSEL FOR RESPONDENT]: Now, the third mitigating factor is personal or emotional problems. Yes, absolutely. We know that he has a serious medical condition. There's another element, of course, Your Honor, about whether the Respondent has a physical or mental disability or impairment. Yes, absolutely. He suffers from ADHD. We had Dr. Ratner examine him. We were going to have Dr. Ratner come at trial.

We're, unfortunately, not able to do that, but that doesn't change the fact that he suffers from a very significant medical condition that is relevant to this case, the root cause of some - - of these issues, of the claims in this case, is this condition which impacts his impulse control. It explains why he lacks the impulse control not to send that crazy email that I saw. That's why. It's hugely important.

\*\*\*

[COUNSEL FOR RESPONDENT]: You may not think - - you know, the Petitioner may not think it's good litigation, but Mr. Rheinstein litigated

(continued . . .)

35

Rheinstein, however, contends, before us, as he did in the hearing, that he had no duty to respond to Bar Counsel's interrogatories and requests for production because his duty to disclose was "nullified" when he removed the matter to the federal court. Respondent, relying on unreported federal district court opinions in *MarcParc Valet, Inc. v. Jasser*, No. PWG-13-3743, 2014 WL 1334211 (D. Md. Apr. 1, 2014); *Steen v. Garrett*, No. 2:12-cv-1662-DCN, 2013 WL 1826451 (D. S.C. Apr. 30, 2013); and *Sterling Savings Bank v. Federal Insurance Company*, No. CV-12-0368-LRS, 2012 WL 3143909 (E.D. Wash. Aug. 1, 2012), contends that "pre-removal discovery requests, which have not yet become due, are nullified upon removal from the state court to federal court."[20]

---

(continued . . .)

those cases and he got results. Okay. So when you take all of those things together along with the fact that, you know, the mental health condition, the ADHD is the root cause of these things, I mean, that is powerful mitigating evidence, Your Honor. Very powerful.

When asked at oral argument before this Court as to whether there is a nexus between ADHD and the underlying conduct which resulted in the rule violation allegations, counsel for Respondent responded:

Yes. . . . [W]hat [Dr. Ratner] was going to say and he reviewed the [Petition] and met with my client on several occasions and what he says is that these circumstances where he does things late, where he acts impulsively, where he files too many things, those attributes are what happens to somebody who has this type of mental impairment. And it doesn't mean that he can't drive a car or go do things. It means that he should be on medication. He should be tempered. That's what we've conceded here from the beginning and that's the argument that we wanted to present.

[20] Respondent also cites *Brewster v. Woodhaven Building & Development, Inc.*, 360 Md. 602, 759 A.2d 738 (2000) and *Swarey v. Stephenson*, 222 Md. App. 65, 112 A.3d 534 (2015), to argue that because Bar Counsel's original discovery requests from 2016 had not

(continued . . .)

36

Respondent contends that the majority of federal courts faced with this issue have found that discovery requests "served in a state case need not be answered once the case is removed to federal court, if the deadline to answer those requests did not lapse before removal." *MarParc Valet, Inc.*, No. PWG-13-3743, 2014 WL 1334211, at *3 (quoting *Steen*, No. 2:12-cv-1662-DCN, 2013 WL 1826451, at *2).

Rheinstein, though, is incorrect in his interpretation as to the effect of removal on discovery requests propounded in state court upon remand; Judge Paul Grimm, the author of the quote in issue, was opining only about the lack of necessity to answer state discovery requests in federal court once the case was removed and not remanded. Judge Grimm, writing for the United States District Court for the District of Maryland, explained that state civil procedure and federal civil procedure differ, such that state norms do not persist in federal court:

> I cannot ignore the fact that discovery proceeds differently in federal court than in state court. Unlike in state court, where discovery requests can be made simultaneously with service of the complaint and summons, *see* Md. R. 2-401, 2-424(b), discovery cannot commence in this Court until the parties have held a Rule 26(f) conference, *see* Fed. R. Civ. P. 26(d)(1).

*MarParc Valet, Inc.*, No. PWG-13-3743, 2014 WL 1334211, at *3.

Respondent, however, would have this case "nullify" his discovery obligations in the state court upon remand. The federal court cannot "nullify" state discovery requests

---

(continued . . .)
yet become due prior to the first removal, Bar Counsel was required to propound them again upon the first remand in order to take effect. These cases do not support such a proposition.

which retain viability upon remand. As a result, Rheinstein's defense to discovery violations fails; we conclude that Judge Klavans did not abuse his discretion in imposing the sanctions for discovery violations.

## FINDINGS OF FACT

The Findings of Fact that Judge Klavans made were based upon the Petition's averments which have been deemed admitted.

With regard to the background of the underlying litigation, Judge Klavans found:

Imagine Capital, Inc. ("Imagine") is a private lender which finances residential rehabilitation projects in Maryland. Imagine's two officers are Robert Svehlak and Neil Roseman. In September 2008, Charles and Felicia Moore, husband and wife, entered into a construction loan agreement for $200,000 with Imagine. The "Loan Commitment Letter" identified Mr. Moore as the borrower and the Moores as guarantors. It stated that the total amount is anticipated to be distributed in 8 construction draws. Mr. Moore, a seasoned real estate investor, pledged four Baltimore City properties as collateral for the loan. After $67,419.92 was disbursed to Mr. Moore, he defaulted on the monthly interest payments.

In June 2009, Imagine, through its then-attorney, James Holderness, Esquire, filed a complaint for confessed judgment. [] On June 12, 2009, the Circuit Court entered judgment against the Moores in the amount of $113,683.76 []. The Moores did not retain counsel or otherwise take any action during the 30 days allotted by the Maryland Rules to vacate the confessed judgments.

In September 2009, Imagine and Mr. Moore reached an agreement whereby Mr. Moore conveyed one of the collateral properties to Boomerang Properties, LLC, an entity controlled by Mr. Svehlak, at an agreed value of $65,000 and signed a promissory note for $20,000. When Mr. Moore defaulted on the agreement, the original note terms resumed and Imagine sought to collect the full amount due less the $65,000 value of the conveyed property. In November 2010, Imagine began collection efforts. On November 17, 2010, Mr. Moore, *pro se*, filed a motion to open or vacate the confessed judgment, which the court denied on February 18, 2011. On March 24, 2011, Imagine filed a request for garnishment of property claiming the Moores still owed $157,578.74. On April 13, 2011, Mr. Moore filed a second motion to vacate judgment, which the court denied.

At that point, the Moores retained Respondent to represent them in challenging the confessed judgments:

> On October 18, 2011, more than two years after the confessed judgments were entered, the Respondent entered his appearance on behalf of the Moores[.] He filed a motion styled "Motion to Open, Modify, or Vacate Confessed Judgments, or in the Alternative, Motion for Order of Satisfaction; and Motion to Open, Modify, or Vacate Orders of Garnishment; and Motion to Enjoin Further Debt Collection Proceedings," along with a memorandum in support thereof alleging the judgments were obtained by the perpetration of a fraud and, pursuant to Maryland Rule 2-535(b), should be vacated.
>
> On October 31, 2011, Imagine, through counsel Jeffrey Tapper, Esq., filed an opposition. A hearing was scheduled for December 7, 2011.

Respondent then, in November, filed a complaint with the Attorney Grievance Commission against Mr. Tapper. Shortly thereafter, Mr. Tapper withdrew from representation of Imagine, based upon the grievance complaint. Imagine then retained new counsel, Mr. Troy Swanson. A hearing was held on Respondent's motion on December 7 and 8, 2011, before Judge Emanuel Brown of the Circuit Court for Baltimore City. During the hearing, according to the Findings of Fact, Respondent "interjected irrelevant and unsubstantiated accusations against Imagine and its members regarding an elaborate fraud scheme." He also "leered at Mr. Svehlak during the proceeding and led the court to believe that Imagine and its officers were under investigation by the Department of Justice." At the conclusion of the hearing, the court vacated the confessed judgments.

Imagine then, according to the Findings of Fact, retained new counsel to pursue an appeal of the circuit court's decision; Respondent threatened to file attorney grievances against their attorneys:

> In December 2011, Imagine retained the law firm of Bowie & Jensen and Matthew Hjortsberg, Esquire, to file an appeal and defend various

39

threatened claims made against it by the Respondent. On January 3, 2012, Imagine filed a Notice of Appeal to the Court of Special Appeals.

On January 25, 2012, Respondent began a series of email correspondence with Mr. Hjortsberg in which he threatened to sue Bowie & Jensen and report Mr. Hjortsberg and his associate, Lisa D. Sparks, Esquire, to the Attorney Grievance Commission if the appeal was not dropped.

Respondent, however, never filed a complaint against either attorney with the Attorney Grievance Commission.

Judge Klavans, in his Findings of Fact, then provided excerpts from Respondent's email correspondence with Mr. Hjortsberg, in which Respondent launched an "*ad hominem* attack on Mr. Svehlak's character" and accused Mr. Hjortsberg and members of his firm of facilitating the fraud he argued Imagine had committed:

> We are going to proceed with the letter to the Maryland Attorney Grievance Commission at this time to simply advise of this case and our concerns over the ethical issues surrounding possible attempts to reinstate this debt based upon the testimony and the facts in this case.
>
> ***
>
> Because I believe the transcript and an audit of your client's bank records would support this notion, I believe this is not only unethical, but that you are sufficiently aware of the background facts that you, Ms. Sparks and Bowie & Jensen can be sued for facilitation of fraud upon the first filing of your appeal documents. In the unlikely event the fraudulent judgments would be reinstated on a procedural technicality, I also believe you would be liable for the damages . . . My exchange with the FBI last Friday was a telephone call with the assigned agent not a meeting.
>
> ***
>
> We are prepared to add your firm as a defendant when the document is filed. You won't be their first lawyer that is also a defendant. We're not going to add you on RICO, so no worries there. You'll be added to our fraud and aiding and abetting counts.
>
> ***
>
> Your actions as a law firm are unethical and constitute facilitation of fraud . . . I will remind you that our suit is already at 28 Defendants (including several attorneys) and that there still may not be enough to pay a likely award by a Baltimore City jury in this case. Therefore, my client has a strong incentive to add any additional defendants against whom he has a good faith

claim. Should you choose to proceed with this illicit strategy, please advise if you have counsel and whether they can accept service on your behalf.

***

You are assisting your client in an unlawful manner by attempting to cause the entry of a knowingly fraudulent confessed judgment against Mr. and Mrs. Moore in bad faith and without substantial justification. We also believe that your attempts to have a knowingly fraudulent confessed judgment entered against Mr. and Mrs. Moore constitute actionable conduct and have at this point created liability on the part of you, Ms. Sparks, and Bowie & Jensen, LLC.

Based upon the threatening tone of these email excerpts, pursuant to the Findings of Fact, Bowie & Jensen informed its professional liability carrier of Respondent's intentions and retained legal counsel, Ward B. Coe, III, and "counseled Imagine about the perception that the Respondent was depriving them of their choice of counsel." Subsequently, Mr. Coe wrote to Respondent, imploring him to cease his threatening conduct toward the law firm. Mr. Coe provided citation to authority "for the proposition that threatening attorney grievance complaints to gain a tactical advantage in litigation violates the Maryland Rules of Professional Conduct." Mr. Hjortsberg also filed a complaint with the Attorney Grievance Commission against Respondent with respect to his threatening conduct.

Respondent, thereafter, filed a frivolous petition for writ of certiorari in this Court, according to the Findings of Fact, on April 16, 2012, as well as a "frivolous" motion to dismiss the Imagine appeal in the Court of Special Appeals:

In support of his Petition, he argued that the case was an "extraordinary case of public policy" with an "almost unbelievable record . . . arguably the most shocking confessed judgment action to ever appear in Maryland's appellate courts." The Respondent included substantial documentation and information not contained in the record. While his Petition for Writ of Certiorari was pending, the Respondent, on April 20, 2012, filed a frivolous motion to dismiss the appeal in the Court of Special Appeals arguing that the appeal was based upon a non-final order. On May 3, 2012, the Court of

41

Special Appeals stayed the appeal pending resolution of the Petition for Writ of Certiorari.

Despite a stay entered by the Court of Special Appeals pending a resolution of the petition for certiorari, the Findings of Fact noted that, on the very next day Respondent filed a "second frivolous Motion to Dismiss Appeal" in the Court of Special Appeals, contending that Imagine failed to order transcripts and ensure timely transmittal of the record. The motion, however, was withdrawn on May 23, 2012. Respondent also filed "Petitioner's Reply to Respondent's Answer to Petition for Writ of Certiorari" in this Court, which the Findings of Fact also noted to be frivolous, as it contained information not within the record.

On May 17, 2012, Respondent filed a 49-page "Preliminary Brief of the Appellees and Memorandum in Support of Motion to Dismiss Appeal," posing the question of "[w]hether the Due Process Clause of the U.S. Const., amend. XIV, § 1 requires the Appellant's failure to fund an escrow account that served as the fundamental consideration for the Appellee's execution of an agreement containing waivers of their due process rights, demonstrated a lack of *consensus ad item* resulting in a failed agreement and void waivers of due process rights." The Findings included reference to the briefing, which not only violated the length requirements set forth in Maryland Rule 8-503(d), but was frivolous:

> In support of his "Preliminary Brief" the Respondent filed an extract containing numerous documents that were not part of the Circuit Court. Also on May 17, 2012, the Respondent filed "Supplementary Exhibits to Petition for Writ of Certiorari" in the Court of Appeals. The filing was frivolous and contrary to the Maryland Rules.

42

We denied Respondent's petition for writ of certiorari, and Respondent filed a "Motion to Resume Proceedings and Renewed Motion to Dismiss Appeal" in the Court of Special Appeals, a frivolous filing according to the admitted averments. On May 28, 2012, Respondent emailed Mr. Coe, threatening a lawsuit against Mr. Hjortsberg, stating, in part:

> It is my intention to sue Mr. Hjortsberg personally for defamatory statements he made against me in a March 21, 2012 letter in which he attempted to accuse me of me knowingly false ethical violations for allegedly misrepresenting something about 'investigations' to a trial court during a December 2011 Motion Hearing . . . Mr. Hjortsberg, an unethical and incompetent attorney, straining to fabricate an issue for a meritless appeal to cover up a client's scam involving financial institutions, unapologetically stated five times in his 11-page letter that I misrepresented something about 'investigation(s)' during that hearing . . . I seek redress in the form of reasonable compensation, an apology letter, and an agreement that Mr. Hjortsberg will not intentionally defame me again . . . Please respond by COB on May 29, 2012 to advise whether discussions about this matter would be productive. If not, my suit will be filed in the Cir. Ct. for Balt. Co. against Mr. Hjortsberg personally[.]

On May 29, 2012, Respondent emailed a "settlement offer" to Mr. Hjortsberg, purportedly on behalf of the Moores, stating:

> [The] best way to be rid of this for all is not to sue anyone . . . the way I look at it, there are two potential law firm insurance policies . . . swanson's and [Bowie & Jensen's] . . . if they are big enough . . . we can avoid a suit, but if not . . . we can't . . . better off filing because we lose a lot if we don't file . . . then again, my guy gets paid quicker and that's a benefit . . . I'm not an expert, but I can think of 10 reasons for malpractice claims by these guys against your firm and Swanson's firm too . . . I always thought doing this quietly might be the best way for all . . . I said something about law firm malpractice insurance for your clients' past lawyers because it might be enough to get there . . . That was before you made the same mistakes as those guys . . . Although everything we have is also with the feds, I still think its better to settle (especially for Roseman) and get my guy out now[.]

On May 30, 2012, according to the admitted averments, Respondent filed a frivolous complaint in the Circuit Court for Baltimore City on behalf of the Moores against twenty-

eight individuals. The complaint alleged that Imagine, acting in concert with others, engaged in an elaborate fraud scheme, alleging multiple causes of action including, among others, fraud, civil conspiracy, intentional misrepresentation, negligent misrepresentation and breach of fiduciary duty. The damages alleged were seventeen million dollars.

The admitted averments also reflected that, on June 20, 2012, Respondent, purportedly on behalf of Mr. Moore, filed a Qui Tam action in the United States District Court for the District of Maryland, which was filed pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et. seq.*, and listed Imagine as one of ten defendants, six of whom also had been named in the circuit court action. The complaint similarly alleged that the defendants had acted in concert to fraudulently procure mortgage insurance from the Federal Housing Administration in twenty-seven separate mortgage transactions between July 2009 and November 2010 costing the government over two million dollars.[21]

The admitted averments noted that the Court of Special Appeals erroneously vacated the appeal filed by Imagine. Imagine filed a Motion to Reconsider. On July 12, 2012, however, Respondent, according to the admitted averments, emailed Mr. Coe, further threatening potential causes of action against Mr. Hjortsberg and his firm, stating in part:

> Mr. Hjortsberg and Bowie & Jensen, LLC are now liable for the following potential counts: (1) civil conspiracy (2) 42 USC 1983, 42 USC 1985, (3) Malicious prosecution, (4) abuse of process, (5) RICO . . . Please advise if

---

[21] The False Claims Act, 31 U.S.C. §§ 3729–3731, "permits qui tam plaintiffs and private attorneys to sue on behalf of the federal government to recover damages and penalties for allegedly fraudulent charges to the United States. A successful qui tam plaintiff receives between 15 and 30 percent of the proceeds or settlement of the action." *Philip Morris Inc. v. Glendening*, 349 Md. 660, 686 n.16, 709 A.2d 1230, 1242 n.16 (1998) (citing *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745–47 (9th Cir. 1993); *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 833 (N.D. Ill. 1993)).

there is any interest in settling this matter. Also, please instruct your client to place a litigation hold on any and all documents in his possession concerning the Imagine Capital matter . . . Please advise if Bowie & Jensen, LLC would have any interest in settlement negotiations pertaining to their role in this matter.

Later that day, Respondent sent Mr. Coe another email, stating in part:

As a follow-up to my email this morning, please provide the following as soon as possible: (1) An indication as to whether your clients are interested in sitting down and discussing settlement possibilities for any liability they may have arising out of the Imagine Capital matter. Should you and your clients wish to sit down and discuss, we can review with you some of the compelling evidence with respect to Imagine Capital's Ponzi scheme and shell property mortgage fraud scam, and the fact that we believe Mr. Hjortsberg, Tina Gentile, and perhaps Lisa Sparks conspired with Imagine Capital, Svehlak and Roseman to cover it up . . . (3) Also, please state whether you can accept service of summonses and/or subpoenas for Bowie & Jensen, LLC, Matthew Hjortsberg, Tina Gentle, Lisa Sparks and any other parties associated with Bowie & Jensen, LLC. As I have previously stated, I am not inclined to sue Ms. Sparks or Ms. Gentle, but I have questions for Ms. Gentle specifically with regard to two specific matters that pertained to things Bowie & Jensen did during the appeal.

That same day, according to the admitted averments, Respondent filed a second Qui Tam action in the federal court, listing twenty-four defendants to include Mr. Svehlak, Mr. Roseman and Imagine Capital. On July 18, 2012, Respondent emailed Mr. Hjortsberg, accusing him of fraudulent conduct and stating, in part:

I am also going to politely ask you and Bowie & Jensen, LLC to resign from representation of Imagine Capital, Robert Svehlak and Neil Roseman, effective immediately, following the withdrawal of your Motion and dismissal of Imagine Capital's appeal. I think you will be conflicted from representing them in future matters pertaining to my clients or the subject mortgage.

*** 

So, what's the problem? Its your intent and attempt to conceal your client's criminal conduct in an extension of a wrongful civil proceeding that was initiated, at least in part, to obtain money to service debt on fraudulent mortgages and stave off potential exposure of the mortgages themselves.

45

Hence, your 'defense' strategy was effectively to keep up the 'charade,' or 'stay the course' knowing your client's conduct was both criminal and wrongful. On Jan 5, you said yourself something to the effect of, 'I know everything . . . far more than any other attorney who represented them.' That is the part that, at least in theory, turns defense attorney to defendant . . . As you consider the rhetorical and perhaps debatable question that follows, please remember the old adage – ethics is doing the right thing when nobody is watching. Was your strategy an unethical attempted cover up or just a lawyer trying to do his job?

According to the admitted allegations, later in July of 2012, Respondent emailed

Mr. Coe, threatening Mr. Hjortsberg, and stating:

Please pardon my French but I can't wait to see matt hjortsberg's balls shoved down his fucking throat . . . pardon me again, we could turn hjortsberg fucking upside down, chew him up and spit him out in so many pieces you cannot imagine . . . again excuse my French, he was 'so smart, a real fuckin genius . . .' Although I do not mean to be disrespectful, and perhaps he's an excellent construction attorney – e.g. he definitely knows far more about procedural rules than I do, he was horrible in this case . . . Does he like managing that law firm? His partners are not going to be happy, especially after I sent several messages to their founding member about the case . . . Indeed Matt Hjortsberg should be disbarred, but I'm not the bar counsel and my duty runs to someone else – the Moores. Mr. Hjortsberg knows he is in trouble . . . he's known for awhile this was a mistake. I hope he's lost sleep about it . . . he should have . . . There are many potential causes of action . . . let's take rico for one . . . most civil rico cases are a bunch of crap, this one isn't . . . a jury will hang matt hjortsberg, no less than they would his clients. The media, the public, and the bar will crucify him . . think about the economy and type of fraud he attempted to conceal . . . the amount, etc. People are hurting out there and they would view hjortsberg's 'defense' strategy quite poorly.

There an unserved lawsuit in the cir ct for balt. city. Its case 24C12003357. There are 28 defts. RICO count is $17M ($5M trebled to $15. + $2M in punitive damages) . . . nothing about matt Hjortsberg yet in any lawsuit. Some defts know about the unspoken subject and its briefly referenced in the complaint but its not fleshed out because that complaint was written primarily in dec and jan. We've been waiting months to kick off our lawsuit, it was delayed for this very conversation. Hjortsberg and his firm are far easier defts (except maybe for his clients) than anyone in that case (many more culpable for my clients' injuries and some pretty corrupt, but none

46

nearly as easy). The claims against Hjortsberg and his firm are like out of a textbook . . just like my prelim brief.

By COB today, I want a response to take to my client . . . I am authorized to offer $5M for a global settlement of this case. I will take any reasonable offer to my clients. We haven't discussed a number for a partial settlement, but my clients are open to one . . . if it is within hjortsberg's policy limits, hed [sic] be damn smart to go for a global . . . With my proposal, Mr. Hjortsberg and his firm need admit no wrong or no liability. We can have complete confidentiality (we would still have to deal with his disingenuous bar complaint which I think may still be under review, but we can do it later). Not a cent of proposed settlement money may come from Mr. Hjortsberg's clients.

Mr. Coe responded to Respondent, according to the admission, informing him of the inappropriate tone of his earlier correspondence regarding Mr. Hjortsberg:

Your email was laced with invective and profanity, and included expressions which could be interpreted as threatening physical violence. I am certain that you did not intend those expressions to be interpreted that way. Regardless of your intent, however, your conduct comprises misconduct that is prejudicial to the administration of justice under Rule 8.4 of the Rules of Professional Conduct, and must cease immediately. It also violates about half the rules of the MSBA Code of Civility, a copy of which I have enclosed.

Respondent replied, walking back his previous statements, but advancing the notion that Mr. Hjortsberg had violated the rules of professional conduct:

I think you know that the profanity, while regrettable, was a figure of speech, and obviously not a threat of physical violence. Its a [sic] not threat at all, other than it is our position he will lose badly in a court of law. Once again, I apologize for the unprofessional tone. What this guy did was a violation of MRPC 8.4, among several others. It is very angering. Simple emails, although unprofessional in tone, are not prejudicial to the administration of justice . . . I promise to keep the tone civil from this point forward, and assure you that there were no threats of anything other than a possible lawsuit.

Respondent later, emailed Mr. Coe yet again, according to the admissions, with regard to Mr. Hjortsberg's alleged fraudulent conduct:

47

I still have not heard from you about Mr. Hjortsberg conspiring with his clients to continue knowingly false civil proceedings against the Moores with the intent to conceal mortgage fraud, bank fraud and money laundering.

Hjortsberg has been target [defendant] # 1 for this case since January . . . We do not want to sue Bowie & Jensen, LLC and put Mr. Hjortsberg through all that misery. I know his wife has been sick. I know he just got promoted last year. He's well-respected. He doesn't need to be tied to a big mortgage fraud scam. His reputation will never recover. I feel bad that Hjortsberg is liable in this case . . . There are many other causes of action to hang this guy on too: 1983, civil conspiracy, abuse of process, and of course after he ultimately loses, malicious prosecution. I am sure there are others we can come up with. As I told him in January, his representation and intent was the equivalent of helping a client bury a murder weapon. In this case there is another word for it, racketeering. Hopefully, this metaphor is [a] bit easier for you to understand.

At the end of July 2012, according to the admitted allegations, Bar Counsel wrote to Respondent, asking him to explain the email he wrote Mr. Coe earlier in the month containing profanity, to which he replied:

Things are not always what they appear. Although my emails have not always sounded professional, the message has always been the same . . . My emails simply asked if his firm wanted to settle his potential liability arising out of his intent to conceal this mortgage fraud scam. It's a reasonable question because he has liability for attempting to violate my clients' due process rights in a false civil proceeding to cover up a major mortgage fraud scheme. We would accept a nickel from his clients (it's all stolen money), we would from Mr. Hjortsberg.

During the pendency of all of this, the Court of Special Appeals had granted Imagine's Motion for Reconsideration and entered an order vacating the July 6, 2012 order dismissing the appeal. Respondent then filed a frivolous Motion to Reconsider the Order granting Imagine's Motion to Reconsider and reinstating the appeal in the Court of Special Appeals, according to the admissions.

48

Thereafter, Mr. Coe wrote Respondent, requesting that he stop threatening Bowie & Jensen and its employees. Two days later, Respondent replied, in part:

> As someone licensed to practice law in seven states and the District of Columbia, I would never accuse an attorney (especially one I have never met) of the type of wrongdoing that I believe to be implicated in this case, unless I firmly believed there was substantial basis to do so. Even if it turns out my beliefs are erroneous (which is highly unlikely), no ethical violations were presented by my emails because there is a good faith basis for the belief. My one regrettable email, which used figure of speech that were less than prudent, were expressions of MY opinion about the strength of the case.

Respondent then wrote a 16-page letter to then Chief Judge Peter B. Krauser of the Court of Special Appeals, accusing "Mr. Hjortsberg, his associate and non-attorney members of his staff of misconduct" to include having "ex parte" communications with the clerk's office in an attempt to "manipulate the trial court record" and "manufacture arguments for appellate review surrounding the void, erroneously-issued and unrecorded May 20, 2011 Order." The Court of Special Appeals denied Respondent's motion for reconsideration, which precipitated a second petition for writ of certiorari in this Court being filed by Rheinstein, a filing Judge Klavans deemed frivolous, based upon the admitted averments.

In October of 2012, Respondent filed his brief, asking the Court of Special Appeals to consider whether "the Circuit Court err[ed] in finding clear and convincing evidence of extrinsic fraud sufficient to vacate the judgment under Maryland Rule 2-535(b)?" He also filed a frivolous "Supplemental Petition for Writ of Certiorari" in this Court, and attached a copy of the record extract filed in the Court of Special Appeals that was the subject of his "Motion to Replace Defective and Non-Compliant Record Extract," also filed with our

49

intermediate appellate court just the day before, a filing, as noted by the admissions, "not in compliance with the Maryland Rules." We denied Rheinstein's second petition for a writ of certiorari in November of 2012.

Judge Klavans noted that, based upon the admitted averments, earlier that fall, in September of 2012, a number of the defendants in the *Moore v. Svehlak* matter filed a Notice of Removal and the case was removed to the United States District Court for the District of Maryland. In response to the removal, Respondent filed a motion to remand the matter to state court and the defendants "filed a series of motions to dismiss and/or motions for summary judgment."

In December of 2012, the Court of Special Appeals heard oral arguments; while Respondent and Mr. Hjortsberg were waiting for the case to be called for argument, Respondent emailed Mr. Hjortsberg his 68-page "Memorandum in Support of Plaintiffs' Emergency Motion to Disqualify the Imagine Defendants' Counsel, *et al*" to be filed in the *Moore v. Svehlak* matter in the federal court, according to the admitted averments. Respondent also forwarded the memorandum to Mr. Coe and asked whether Mr. Hjortsberg "is leaving the case voluntarily." In the memorandum, Respondent argued that Mr. Hjortsberg and Bowie & Jensen should be disqualified from the case because they "are potential co-conspirators." Again, Judge Klavans found the memorandum, which was filed in December of 2012, to be frivolous, based upon the admitted averments. The federal court, however, struck Respondent's motion and memorandum attempting to disqualify Bowie & Jensen for its length, in violation of Local Rule 105.3.

The Findings further set out that, at the end of December 2012, Respondent emailed Mr. Coe a 13-page letter "outlining the 'fallacies' of Mr. Hjortsberg's legal strategy." Respondent, again, "reiterated that Mr. Hjortsberg was 'complicit in the very same fraud as [his] clients" and threatened to file another Motion to Disqualify him as counsel, while asking if there was any interest in settlement discussions.

In February of 2013, before the Court of Special Appeals issued its decision, the Moores filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court, thereby, staying the matter in the Court of Special Appeals.

According to the admissions, Respondent informed Mr. Hjortsberg that he was "prepared to take the depositions of Robert S. Svehlak and Neil D. Roseman as soon as possible." All litigation involving the Moores, however, had been automatically stayed based upon their bankruptcy filing. The Findings, however, noted that "Respondent did not advise Mr. Hjortsberg that his clients filed for bankruptcy protection and he had no legal authority to take any action in any pending litigation after February 20, 2013."

In April of 2013, Marc Baer, the appointed trustee of the Moores' bankruptcy estate, filed an Application to Employ Whiteford, Taylor & Preston as Special Counsel to Trustee. The application was granted, and David Daneman entered his appearance in the *Imagine Capital v. Moore* and *Moore v. Svehlak* matters. In July of 2013, the federal district court remanded the *Moore v. Svehlak* matter back to the Circuit Court for Baltimore City.

At the end of 2013, Mr. Daneman, the trustee, was able to settle the Imagine matter with the Moores so that the Moores received money rather than having to pay; Mr. Daneman then

51

filed a motion for approval of the Settlement and Compromise that [he] had reached with the defendants in the *Moore v. Svehlak* matter as well as the appellants in *Imagine v. Moore*. The settlement provided, *inter alia*, that in exchange for the Defendants' payments in the aggregate amount of $137,500 and release of all claims against the Moore's bankruptcy estate, the Trustee would dismiss *Moore v. Svehlak* with prejudice. As of December 2013, several of the defendants in *Moore v. Svehlak* had filed claims against the bankruptcy estate. The settlement agreement further provided that the stay would be lifted in the Court of Special Appeals to allow an opinion and mandate to be issued in *Imagine v. Moore* deciding the issue of whether Imagine committed extrinsic fraud.

While neither Bowie & Jensen nor Mr. Hjortsberg had been added to the *Moore v. Svehlak* matter, they joined in the settlement agreement because they had been identified as possible additional defendants. The settling parties denied liability and stated that they entered into the settlement agreement "as a compromise in order to avoid expense and to terminate all controversies and/or claims for injuries or damages of whatsoever nature[.]" Neither Bowie & Jensen nor Mr. Hjortsberg contributed any funds towards the settlement.

The Bankruptcy Court approved the settlement and compromise.

In November of 2014, the United States also filed Notices of Election to Decline Intervention in both Qui Tam actions. That same month, the Court of Special Appeals filed an unreported opinion in *Imagine v. Moore*, No. 2445, September Term, 2011, rejecting all of Respondent's arguments, which, according to the admitted averments, the Court found to have "no merit":

The Court rejected the Respondent's arguments in support of the Motions to Dismiss, finding his legal theory to be "mistaken." The Court found that the Moores had "adduced no evidence" to support their theory on the merits of the case and concluded the Respondent's arguments to have "no merit." In a footnote, the Court cautioned the Respondent for filing a brief in violation of Maryland Rule 8-503(d). The Court reversed the Circuit Court finding and remanded the case for further proceedings.

Based upon the settlement agreement in the bankruptcy proceeding, the confessed judgment in the circuit court was dismissed. The Findings noted, however, that Respondent, nevertheless, filed a "frivolous" Motion for Rehearing and Reconsideration; and Motion Requesting Reported Opinion Pursuant to Md. Rule 8-605.1 and a Motion for Leave to File Amicus Paper in the Court of Special Appeals, all of which were denied.

Based upon the admitted averments, Judge Klavans then noted that Respondent pursued the Moore's estate for fees in relation to his representation:

> During the pendency of the bankruptcy proceeding, the Respondent filed five proofs of claim against the Debtors' estate associated with his representation of the Moores. The claims, including amendments, totaled $85,604.61. Both the Trustee and the Moores filed objections to the claims. On May 21, 2015, the Trustee filed Notice of Assignment of Bankruptcy Estate's Qui Tam Claims assigning the claims to the Respondent in exchange for withdrawal of his claims against the estate.

As set forth in the Findings, Respondent had failed to serve any of the defendants in the Qui Tam claims.

Thereafter, in 2017, Judge Catherine Blake of the United States District Court for the District of Maryland dismissed the first Qui Tam complaint with prejudice. She found that Respondent failed to timely serve the defendants and "offer[ed] no explanation for his failure" and found some of his defenses to the defendants' motions to dismiss to be "meritless." Judge Blake additionally noted that Respondent's complaint was "a paradigmatic example of a 'parasitic' suit," filed in violation of the False Claims Act public disclosure bar, a bar "to prevent 'parasitic' qui tam actions in which relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous disclosures of government fraud." Judge Blake recognized that neither Rheinstein

53

nor Mr. Moore were "original sources" and that they offered no information that is "independent of and materially adds to" the information contained in three plea agreements that already existed.

With respect to Respondent's conduct, Judge Blake found that Rheinstein "displayed a pattern of not meeting deadlines throughout th[e] litigation"; although she had granted Rheinstein's motion for leave to file excess pages, she concluded that there was no good cause to "permit [his] continued excessively lengthy filings." She further concluded that the complaint filed by Rheinstein failed to particularly allege the relevant facts supporting the fraud charge and simply "made vague allegations upon 'information and belief.'" She also found that two of the defendants listed in the complaint were actually victims of the fraud scheme.

Judge Klavans found, based upon the allegations as admitted, that Respondent was nevertheless "undeterred" as he continued efforts to "promote his conspiracy theory and further his financial interest," as he persisted in the second Qui Tam action:

> with filing a Motion to Alter/Amend Judgment on April 25, 2017 and Amended Motion to Alter/Amend Judgment on May 9, 2017. On May 9, 2017, in exchange for the Respondent's withdrawal of the Motion to Alter/Amend, as to Cardinal Financial and Wells Fargo Bank, those two defendants withdrew their pending Motions of Attorneys' Fees. The remaining defendants filed responses and, by Order entered December 5, 2017, Judge Blake denied the Respondent's Motion.

Respondent then filed a Motion to Voluntarily Dismiss the second Qui Tam case.

## CONCLUSIONS OF LAW

We already have denied Rheinstein's exceptions regarding Judge Klavans' decision to impose discovery sanctions against him, so that we now review de novo Judge Klavans'

54

conclusions of law.  Maryland Rule 19-741(b)(1)[22]; *see Attorney Grievance Comm'n v. Conwell*, 462 Md. 437, 457, 200 A.3d 820, 831 (2019) (citing *Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 494, 175 A.3d 129, 136 (2017)).

In the course of that review, we consider any exceptions filed by Respondent.  With respect to Rheinstein's representation of the Moores, Judge Klavans concluded that he violated Rules 1.1, 3.1, 3.4, 4.4 and 8.4, all of which Rheinstein excepts to.

Rheinstein excepts to Judge Klavans' conclusion that he violated Rule 1.1 when he "failed repeatedly to analyze the relevant factual and legal elements and demonstrated a disregard for the rules of procedure."  Specifically, Judge Klavans noted that, "Respondent developed an elaborate conspiracy theory involving Imagine, its principals, attorneys, lenders and other associates and embarked on a course of conduct, disconnected from the facts and applicable law – both substantive and procedural – to prove his theory."

Rheinstein argues that Judge Klavans erred in finding that he demonstrated an ignorance to the applicable law when he first filed a petition for writ of certiorari in this Court regarding the fraud action, contending that the matter was an "extraordinary case of public policy" with an "almost unbelievable record . . . arguably the most shocking confessed judgment action to ever appear in Maryland's appellate courts."  As noted in the admitted averments, however, Rheinstein's assessment of the case ran contrary to the opinion of the Court of Special Appeals, which found the case to be nothing more than an ordinary confessed judgment action.

---

[22] Maryland Rule 19-741(b)(1) states: "The Court of Appeals shall review de novo the circuit judge's conclusions of law."

Rheinstein also takes issue with the finding that his "Preliminary Brief" filed in the Court of Special Appeals on May 17, 2012, further "demonstrated his inability or unwillingness to analyze the relevant facts." Again, as cited in the admissions, the opinion of our intermediate appellate court found Respondent's arguments to be "'mistaken,' contrary to 'clear' precedent established by the Court of Appeals, and 'without merit.'"

Rheinstein also disagrees with the assessment that he repeatedly disregarded the rules of procedure, either intentionally or ignorantly, also amounting to a Rule 1.1 violation, as demonstrated by the flaws contained in the following filings:

- The April 2012 petition for writ of certiorari filed in this Court which violated Rules 8-112(c)[23] and 8-303(b)[24];

---

[23] Rule 8-112(c) provides:

**Printed and Computer-Generated Papers—Proportionally Spaced type.**
(1) Type Size and Font. Proportionally spaced type (such as produced by commercial printers and many computer printers) in the text and footnotes shall be in a font approved by the Court of Appeals and shall not be smaller than 13 point. The Court of Appeals shall approve, from time to time, a list of fonts that comply with the requirements of this Rule. Upon the docketing of an appeal, the clerk of the appellate court shall send the approved list to all parties or their attorneys.
(2) Spacing. Papers prepared with proportionally spaced type shall have double spacing between lines, except that headings, indented quotations, and footnotes may be single-spaced.

[24] Rule 8-303 governs the procedure for filing a petition for writ of certiorari in this Court, and provides in pertinent part:

**(b) Petition.** (1) Contents. The petition shall present accurately, briefly, and clearly whatever is essential to a ready and adequate understanding of the points requiring consideration. Except with the permission of the Court of Appeals, a petition shall not exceed 3,900 words. It shall contain the following information:

(continued . . .)

56

- A frivolous motion to dismiss the appeal in the Court of Special Appeals "while, at the same time, arguing to the Court of Appeals that certiorari was warranted";

---

(continued . . .)

(A) A reference to the action in the lower court by name and docket number;

(B) A statement whether the case has been decided by the Court of Special Appeals;

(C) If the case is then pending in the Court of Special Appeals, a statement whether briefs have been filed in that Court or the date briefs are due, if known;

(D) A statement whether the judgment of the circuit court has adjudicated all claims in the action in their entirety, and the rights and liabilities of all parties to the action;

(E) The date of the judgment sought to be reviewed and the date of any mandate of the Court of Special Appeals;

(F) The questions presented for review;

(G) A particularized statement of why review of those issues by the Court of Appeals is desirable and in the public interest.

(H) A reference to pertinent constitutional provisions, statutes, ordinances, or regulations;

(I) A concise statement of the facts material to the consideration of the questions presented; and

(J) A concise argument in support of the petition.

(2) Documents. A copy of each of the following documents shall be submitted with the petition at the time it is filed:

(A) The docket entry evidencing the judgment of the circuit court;

(B) Any opinion of the circuit court;

(C) Any written order issued under Rule 2-602(b);

(D) If the case has not been decided by the Court of Special Appeals, all briefs that have been filed in the Court of Special Appeals; and

(E) Any opinion of the Court of Special Appeals.

(3) Where Documents Unavailable. If a document required by subsection (b)(2) of this Rule is unavailable, the petitioner shall state the reason for the unavailability. If a document required to be submitted with the petition becomes available after the petition is filed but before it has been acted upon, the petitioner shall file it as a supplement to the petition as soon as it becomes available.

(4) Previously Served Documents. Copies of any brief or opinion previously served upon or furnished to another party need not be served upon that party.

- A second frivolous motion to dismiss in the Court of Special Appeals, despite the stay entered there, at his request, and in light of his pending petition for writ of certiorari;

- A 49-page "Preliminary Brief of the Appellees and Memorandum in Support of Motion to Dismiss Appeal" filed in the Court of Special Appeals which violated the length requirements of Rule 8-503(d), despite the stay;

- An extract filed in the Court of Special Appeals containing numerous documents that were not part of the Circuit Court record which violated the Maryland Rules and simultaneously filing "Supplementary Exhibits to petition for Writ of Certiorari," in support of his "Preliminary Brief" with this Court;

- A "Supplemental Petition for Writ of Certiorari" with a copy of the flawed record extract filed in the Court of Special Appeals attached; and,

- Purporting to represent the Moores after they petitioned for bankruptcy protection.

Rheinstein argues that any technical errors that may have existed in his filings were primarily a result of his inexperience in preparing appellate documents and not the product of a willful disregard for the rules of procedure.

Rule 1.1 "requires an attorney to provide competent representation to his/her client by applying the appropriate knowledge, skill, thoroughness, and preparation to the client's issues." *Attorney Grievance Comm'n v. Shakir*, 427 Md. 197, 205, 46 A.3d 1162, 1167 (2012). Comment 5 to the Rule provides, in part, that: "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." The Comment further states that, the "required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity." While a single mistake or error

58

does not necessarily demonstrate that an attorney is incompetent, multiple errors, considered together, may rise to the level of a Rule 1.1 violation. *See Attorney Grievance Comm'n v. Brown*, 308 Md. 219, 232, 517 A.2d 1111, 1117 (1986). Although the filing of a motion or pleading that ultimately proves to be unsuccessful or even lack merit is not per se a violation, a violation may, nonetheless, exist when a claim in a pleading demonstrates an attorney's failure to apply requisite thoroughness and preparation, lacked merit and failed to advance a client's cause. *Conwell*, 462 Md. at 462–63, 200 A.3d at 834–35.

Rheinstein violated Rule 1.1 because, repeatedly, his pleadings lacked merit and, woefully, reflected his significant unwillingness to explore the correct procedure and inability to comply with the rules in both federal and state cases.

Rheinstein next excepts to Judge Klavans' conclusion that he violated Rule 3.1, which prohibits an attorney from bringing or defending a proceeding "unless there is a basis for doing so that is not frivolous." He contends that Judge Klavans erred by not considering the actual pleadings and transcripts of the underlying litigation which were not in the record, but rather based his conclusion on the result of the litigation.

Judge Klavans based his conclusion on the fact that Rheinstein filed "numerous frivolous papers and pleadings and took positions unsupported by fact or law." He found that the following filings amounted to a Rule 3.1 violation:

- The October 18, 2011 Motion to Revise and Vacate the judgments and memorandum in support filed in *Imagine v. Moore* was unsupported by the facts and law as outlined by the Court of Special Appeals' opinion. Specifically, the Respondent failed to apply the applicable law regarding void vs. voidable; advanced a meritless claim that intrinsic fraud is sufficient to vacate a confessed judgment; and failed to evaluate the facts or produce any evidence of extrinsic fraud as required by Maryland Rule 2-433(b).

59

- The April 16, 2012 Petition for Writ of Certiorari filed in the Court of Appeals [and supporting filings] were unsupported by the facts of the case. The Petition was not based on the record, but rather on the Respondent's unsubstantiated conspiracy theories. The Petition was denied, and as evidenced by the Court of Special Appeals' opinion, the record failed to establish any basis for the Respondent's contentions. Specifically, there was no jurisdictional defect and no evidence existed in the record "to support a finding of extrinsic fraud sufficient to warrant revision of the confessed judgment."

- [T]he Respondent filed Motions to Dismiss in the Court of Special Appeals while his Petition for Writ of Certiorari was pending in the Court of Appeals. It is inconceivable how the Respondent could present a meritorious argument that, on the one hand, certiorari was appropriate, while arguing on the other hand that the appeal should be dismissed for mootness or as premature. The merits of the Respondent's Motions were summarily rejected by the Court of Special Appeals.

- On May 30, 2012, the Respondent filed suit against 28 defendants in the Circuit Court for Baltimore City requesting $17,000,000 in damages. The lawsuit was clearly nothing more than a further attempt to compel a settlement from Mr. Hjortsberg and Bowie & Jensen (as well as a second law firm). It is noteworthy that the complaint was filed within days of the Respondent's threat to sue Mr. Hjortsberg personally and was filed only after Mr. Hjortsberg failed to respond to Respondent's extortionist $5,000,000 settlement demand.

- On December 14, 2013, the Respondent filed a frivolous Motion to Disqualify Mr. Hjortsberg and Bowie & Jensen in the U.S. District Court for the sole purpose of harassing and burdening Mr. Hjortsberg and his clients. . . . On December 17, 2012, the U.S. District Court, *sua sponte*, struck the Respondent's frivolous filing. Notably, the Respondent never refiled the Motion, despite threats to do the same, thus conceding that the Motion was without basis in fact or law.

- On February 25, 2013, the Respondent emailed Mr. Hjortsberg purporting to continue to represent the Moores in *Moore v. Svehlak*. The Respondent did not advise Mr. Hjortsberg that his clients had filed for bankruptcy and stated that he was "prepared to take the depositions of Robert S. Svehlak and Neil D. Roseman as soon as possible." With the February 20, 2013 bankruptcy filing, *Moore v. Svehlak* was automatically stayed and became the property of the bankruptcy estate. The Respondent had no legal authority to take any

action in any pending litigation after February 20, 2013, and his attempt to schedule depositions was frivolous.

- On November 17, 2014, the Court of Special Appeals issued its unreported opinion. On December 18, 2014, the Respondent filed a Motion for Rehearing and Reconsideration; Motion Requesting Reported Opinion; and Motion for Leave to File Amicus Paper in the Court of Special Appeals. As of December 18, 2014, the Moores had filed for bankruptcy and the bankruptcy stood in their place. The Respondent had no standing to file any papers in the Court of Special Appeals . . . . The Court finds the Respondent's motive, in filing his December 18 motions, was purely selfish in an effort to advance his own financial gain.

Comment 1 to Rule 3.1 states, in part, that, "[t]he advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed." Comment 2 further elucidates, that, "[w]hat is required of attorneys, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." The comment also provides that an action may be deemed frivolous, "if the attorney is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for extension, modification or reversal of existing law."

In *Attorney Grievance Commission v. Alison*, 349 Md. 623, 709 A.2d 1212 (1998), this Court upheld the hearing judge's conclusion that Alison had violated Rule 3.1 when he "brought the RICO and fraud counts vexatiously for the purpose of harassing the defendants" and "solely to take advantage of the treble damages provisions of the RICO statute in order to obtain an exorbitant settlement from the defendants," which had

61

amounted "to a claim brought in bad faith and without substantial legal or factual justification." *Id.* at 632, 709 A.2d at 1216. We also concluded that Alison violated the rule when he filed a lawsuit against a law firm where the claim was "without foundation" since the firm's attorneys "never had a legal relationship with Mr. Alison." *Id.* at 640, 709 A.2d at 1220. We recognized that a Rule 3.1 violation may occur where the legal process is used "for the sole purpose of harassing [a party]." *Id.*; *see also Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 511, 109 A.3d 1, 58 (2015) (sustaining a Rule 3.1 violation where respondent attempted to enforce over 120 unenforceable subpoenas through meritless motions to compel in order to coerce opposing parties into compliance with excessive discovery requests); *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 356–57, 974 A.2d 331, 346 (2009) (stating that the "legal process should never be used as the Respondent did here, *i.e.*, merely [as] a device to apply pressure to the other parties." (alteration added)).

In the present matter, Rheinstein violated Rule 3.1 when he filed his lawsuits "with vexatious RICO and fraud counts in an effort to obtain an 'exorbitant settlement.'" His multiple filings and lengthy pleadings were "both incredible and outrageous in light of what actually occurred," *Alison*, 349 Md. at 631, 709 A.2d at 1216 and were designed to bully Mr. Hjortsberg and his associates into settlement. Rheinstein clearly abused the legal process to further his agenda, both in the courts of this State and the federal system. Accordingly, we overrule Rheinstein's exception and conclude that he violated Rule 3.1.

Rheinstein excepts to Judge Klavans' conclusions that he violated Rules 3.4(c) and (e) "in his attempt to prove his elaborate conspiracy theory and force a settlement" and

62

when "he interjected irrelevant and unsubstantiated accusations against Imagine and its members regarding an elaborate fraud scheme and led the court to believe that Imagine and its officers were under investigation of the Department of Justice." He, conversely, avers that he did not violate Rule 3.4 because he zealously and competently represented the Moores.

Rule 3.4(c) prohibits an attorney from "knowingly" disobeying "an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 3.4(e) prohibits an attorney from alluding, at trial, "to any matter that the attorney does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue . . . or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused[.]"

As previously discussed, however, Rheinstein clearly violated Rules 3.4(c) and (e) by persistently advancing an elaborate conspiracy theory unsupported by fact, trying to force a settlement with Imagine and pursuing the Moores for attorneys' fees despite their having filed for bankruptcy. Furthermore, his unsubstantiated assertion that Imagine and its members were being investigated by the Department of Justice prompted Mr. Svehlak to invoke his Fifth Amendment right to remain silent, resulting in the circuit court vacating the confessed judgment, which was ultimately reversed by the Court of Special Appeals that found no clear and convincing evidence of extrinsic fraud. Accordingly, we overrule Respondent's exceptions and conclude that he violated Rules 3.4(c) and (e).

Rheinstein then asserts that Judge Klavans' conclusion that he violated Rule 4.4(a) is at odds with the record. Rule 4.4(a), in part, prohibits an attorney from using means "that have no substantial purpose other than to embarrass, delay, or burden a third person[.]" Attorneys "are required to act with common courtesy and civility at all times in their dealings with those concerned with the legal process." *Attorney Grievance Comm'n v. Payer*, 425 Md. 78, 96, 38 A.3d 378, 388 (2012) (quoting *Attorney Grievance Comm'n v. Link*, 380 Md. 405, 425, 844 A.2d 1197, 1209 (2004)). An attorney may violate Rule 4.4 when he or she includes individuals in a lawsuit without substantial justification or in "an attempt to get to some deep pockets by using a shotgun approach[] and hoping to obtain a good settlement." *Alison*, 349 Md. at 633, 709 A.2d at 1217 (alteration in original). An attorney also violates the rule when his or her "actions were pursued in total disregard for their substantial cost to [the opposing party], were intentionally dilatory and were without legal basis." *Attorney Grievance Comm'n v. McClain*, 406 Md. 1, 15, 956 A.2d 135, 143 (2008).

Here, Rheinstein violated Rule 4.4(a) when he threatened to report Mr. Hjortsberg and Ms. Sparks to the Attorney Grievance Commission if they refused to drop the appeal in the Court of Special Appeals and/or withdraw as counsel for Imagine. He also violated the Rule when he wrote then-Chief Judge Krauser, accusing Mr. Hjortsberg's firm for having an *ex parte* conversation with the clerk's office in an attempt to "manipulate the trial record." His actions served no other purpose than an attempt to bully a dismissal of the appeal in the Court of Special Appeals and withdrawal of counsel. Rheinstein further violated the Rule when he threatened to sue the attorneys for claims related to their clients'

64

alleged fraudulent conduct. Accordingly, we overrule his exception and conclude that he violated Rule 4.4(a).

Rheinstein, finally, excepts to Judge Klavans' conclusion that he violated Rules 8.4(a), (c) and (d). Rheinstein excepts to the conclusion that he violated Rule 8.4(a) insofar as he excepts to the previous conclusions of rule violations. We overrule his exception as we have sustained all other rule violations. *See Attorney Grievance Comm'n v. Van Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012).

Rheinstein excepts to Judge Klavans' conclusion that he violated Rule 8.4(c) when he, at the hearing before Judge Brown, "interjected irrelevant and unsubstantiated accusations against Imagine and its members regarding an elaborate fraud scheme[,] leered at Mr. Svehlak and led the court to believe that Imagine and its officers were under investigation by the Department of Justice." Judge Klavans further noted that, while Rheinstein's misconduct "was isolated to [the] misleading statements at the December 2011 hearing, the impact of his misconduct was enormous," as his "irrelevant and unsubstantiated accusations" resulted in "Mr. Svehlak invok[ing] his Fifth Amendment right to remain silent" and the vacatur of the confessed judgment, "setting into motion the years of frivolous litigation that followed."

Rheinstein, primarily, contends, however that Judge Klavans went beyond the averments in the Petition because, he asserts, Bar Counsel did not allege that he made misrepresentations or false statements. The Petition, however, specifically provides that, "Respondent interjected irrelevant and unsubstantiated accusations . . . and led the court to

65

believe that Imagine and its officers were under investigation by the Department of Justice."

Respondent, then, argues that he never misled Judge Brown because he merely stated, in response to the question as to whether there were any criminal charges that may be filed against Imagine and its officers that, "[w]e have consulted with the U.S. Attorney, Your Honor, yes." Rheinstein also contends that he did not advance irrelevant or unsubstantiated accusations, as the evidence he proffered indicated that Imagine had engaged in fraud with respect to the Moore loan.

Rule 8.4(c) provides that "it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Of import to the instant matter, "deceit" is defined as the "act of intentionally giving a false impression." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 698, 73 A.3d 161, 168 (2013) (citation omitted). A "misrepresentation is made when the attorney 'knows the statement is false,' and cannot be 'the product of mistake, misunderstanding, or inadvertency.'" *Id.* (quoting *Attorney Grievance Comm'n v. Zeiger*, 428 Md. 546, 556, 53 A.3d 332 (2012) (internal citation omitted)). We also note that there "is significant overlap between [Rule] 3.3(a)(1) and 8.4(c)," such that a "lawyer that violates [Rule] 3.3(a) generally violates [Rule] 8.4(c) as well." *Attorney Grievance Comm'n v. Steinhorn*, 462 Md. 184, 198–99, 198 A.3d 821, 829 (2018) (quoting *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 707, 73 A.3d 161 (2013)). "This overlap occurs because both rules are violated when a lawyer—regardless of intent—knowingly makes a false statement to the court." *Id.*

66

In *Attorney Grievance Commission v. Mixter*, we concluded that Mixter engaged in misrepresentative acts in violation of Rule 8.4(c) because his actions were "laden with deceit and consistent misrepresentations to the courts, parties and witnesses of both fact and law." 441 Md. 416, 523, 109 A.3d 1, 65–66 (2015). In that case, we agreed with the hearing judge, that the Rule 8.4(c) violation was supported by the fact that Mixter had falsely asserted in twenty-four motions that the oppositions were properly served with subpoenas outside of Maryland, falsely certified in fifty-three certifications that he had engaged in good faith efforts at resolving discovery disputes and willfully omitted material information in connection with motions, among others. In *Attorney Grievance Commission v. Sperling*, 432 Md. 471, 494, 69 A.3d 478, 491 (2013), we also sustained a Rule 8.4(c) violation based upon the attorney's misrepresentation of facts to a court "in an effort to mislead the court into granting both [of his] motions to reopen a case."

In *Attorney Grievance Commission v. Woolery*, 462 Md. 209, 198 A,3d 835 (2018), we concluded that Woolery had violated Rule 8.4(c) when he falsely filed a motion to remove an individual as a trustee from an estate, which he supported with an affidavit from his client, based upon the allegation that the trustee had undertaken representation of a party of interest in the estate. In excepting to the conclusion that he had violated Rule 8.4(c), Woolery argued that Bar Counsel failed to prove that he knew that the affidavit was false; we, however, found that the hearing judge possessed clear and convincing evidence that Woolery had no basis to believe that the trustee represented the third-party in interest when he filed his motion to remove. We noted that the filing had been "[p]rompted by his

'personal animus'" and recent termination of his representation, thereby, violating the Rule. *Id.* at 246, 198 A.3d at 857.

In the present case, Rheinstein violated Rule 8.4(c) when he advanced allegations of fraud against Imagine and represented to the Circuit Court that Imagine and its principals faced criminal charges, both of which lacked any substantiation, as noted by the Court of Special Appeals, the United States District Court for the District of Maryland and Judge Klavans.

Rheinstein then excepts to Judge Klavans' conclusion that he violated Rule 8.4(d), based upon Rheinstein's "complete disregard for his obligations as a member of the Bar" and subordination of "his responsibility to the courts, his clients, third parties, and his opponents in an effort to advance his own agenda for financial gain." Such vexatious litigation, Judge Klavans noted, sullied the reputation of the legal profession.

"A lawyer engages in conduct prejudicial to the administration of justice," thereby violating Rule 8.4(d), "when he or she engages in conduct that 'tends to bring the legal profession into disrepute.'" *Attorney Grievance Comm'n v. Plank*, 453 Md. 446, 465–66, 162 A.3d 888, 899 (2017) (quoting *Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 712, 109 A.3d 1165, 1170 (2015)). Generally, an attorney violates Rule 8.4(d) "where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." *Attorney Grievance Comm'n v. Sacks*, 458 Md. 461, 514, 183 A.3d 86, 116 (2018) (quoting *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 602, 133 A.3d 1034, 1049 (2016), *reconsideration denied* (Apr. 21, 2016)). We have concluded that an attorney violated Rule 8.4(d) when she threatened to bring an

68

unfounded disciplinary complaint against opposing counsel when opposing counsel refused to comply with the attorney's untimely discovery requests. *Plank*, 453 Md. at 468–69, 162 A.3d at 901.

In *Attorney Grievance Commission v. Alison*, we also held that the hearing judge was correct in finding that filing a lawsuit against a law firm that "'was completely without foundation'" was prejudicial to the administration of justice because the conduct "'generated a lot of court time, unnecessary pleadings and involvement of parties for the sole purpose of harass[ment.]'" 349 Md. at 640, 709 A.2d at 1220–21; we also held that the inclusion of meritless counts in a complaint also violated Rule 8.4(d). *Id.* at 633, 709 A.2d at 1217. We also have determined that a Rule 8.4(d) violation occurred when an attorney filed suit against a former client in federal court in Maryland, where the client neither resided nor had any contacts, in an effort to collect attorneys' fees, requiring the former client to hire a Maryland attorney to defend the frivolous action. *Powers*, 454 Md. at 99–100, 164 A.3d at 150.

In the instant case, Rheinstein engaged in conduct that brought the legal profession into disrepute in violation of Rule 8.4(d), as it would certainly negatively impact the perception of the legal profession of a reasonable member of the public. As Judge Klavans noted, Rheinstein "engaged in a persistent course of misconduct fueled by his conspiracy theories and disconnected from the facts and the applicable procedural and substantive law." Rheinstein wasted judicial resources and forced others to expend unnecessary resources to defend against frivolous allegations he presented in the Circuit Court for Baltimore City, the Court of Special Appeals, the United States District Court for the

District of Maryland, the United States Court of Appeals for the Fourth Circuit, the United States Bankruptcy Court and this Court. He also "repeatedly sought to intimidate and harass his opponents to coerce a settlement contrary to the merits of any of his claims." Furthermore, Rheinstein, during the pendency of the Moores' bankruptcy proceeding, filed five proofs of claim against their estate, seeking a total of $85,604.61 in attorney's fees for his representation. The exorbitant amount in fees were the result of Rheinstein's vexatiousness and frivolous filings, as well as consistent harassment of opposing counsel. Accordingly, we overrule his exception to the Rule 8.4(d) violation.

## SANCTION

Bar Counsel, based upon the unsubstantiated representation to the Circuit Court about possible criminal charges against Imagine and its principals and Rheinstein's obstructionist conduct during the disciplinary proceedings, recommends his disbarment.

Rheinstein, initially, proposes that we should dismiss the charges against him, because, he argues, his "zealous" conduct did not amount to a violation of the rules of professional conduct. In the alternative, he contends that the matter should be remanded back to the Circuit Court to permit discovery to take place, so that his defenses can be "properly considered." Rheinstein further posits that, if this Court determines that an immediate sanction is warranted, he "would accept a reprimand" based upon "the tenor of his email correspondence for which he has expressed regret on multiple occasions."

The "purpose of 'attorney discipline is protection of the public, rather than punishment' of the errant attorney." *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 205, 105 A.3d 533, 574 (2014) (quoting *Attorney Grievance Comm'n v. Coppola*, 419 Md.

70

370, 404, 19 A.3d 431, 451 (2011) (further citation omitted)). The public is protected by attorney sanctions because they demonstrate "to members of the legal profession the type of conduct which will not be tolerated." *Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 714, 810 A.2d 996, 1020 (2002) (citation omitted). In crafting a sanction, our task is to "evaluate each attorney grievance matter on its own merits, considering the particular facts and circumstances in order to determine an appropriate sanction." *Hodes*, 441 Md. at 205–06, 105 A.3d at 574 (citing *Coppola*, 419 Md. at 404, 19 A.3d at 451). In so doing, we often consider various aggravating factors found in Standard 9.22 of the American Bar Association for Imposing Lawyer Sanctions when imposing discipline, which are:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances.

71

*Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992). We also consider mitigation and will evaluate whether any of the following factors exist:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Coppola*, 419 Md. at 407, 19 A.3d at 453 (quoting *Attorney Grievance Comm'n v. Gordon*, 413 Md. 46, 63, 991 A.2d 51, 61 (2010) (further citation omitted)).

The hearing judge, although not crafting a sanction, addresses aggravating and mitigating factors and includes findings relevant to them. *See Attorney Grievance Comm'n v. Ucheomumu*, 462 Md. 280, 323–28, 200 A.3d 282, 307–10 (2018), *reconsideration denied* (Dec. 12, 2018).

With respect to aggravation, Judge Klavans found several 9.22 factors relevant to the present case, those being (b) dishonest or selfish motive, (c) a pattern of misconduct, (d) multiple offenses, (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process, (g) refusal to acknowledge wrongful nature of conduct and (i) substantial experience in the practice of law. Rheinstein excepts to each of Judge Klavans' findings as to the presence of aggravating factors, which we shall address in turn.

As to aggravating factor (b), "dishonest or selfish motive," Rheinstein excepts to Judge Klavans' finding that he was motivated by his own financial gain, because he charged the Moores $85,604.61 for his representation and because he exhibited "abusive and threatening" behavior towards his opponents in order to force settlement. Rheinstein contends, rather, that he did not pursue the litigation for personal gain, but "went out of his way to represent his clients" and allegedly uncovered a "fraud scheme" that had "real victims" and which resulted in "criminal indictment and six-figure financial settlements," again without substantiation.

Rheinstein, however, resorted to unacceptable and egregious tactics in an attempt to force a settlement on a frivolous claim, thereby exhibiting a dishonest and selfish motive. Rheinstein also pursued the Moores for attorneys' fees, despite their bankrupt status, for pursuing vexatious litigation, which did not benefit them. *See Conwell*, 462 Md. at 474, 200 A.3d at 841 (noting that aggravating factor (b) was present when attorney inflated client invoices, pursued previous client for fees despite cease-and-desist order by Bankruptcy Court and misrepresented the legal work contributed to client's cause of action to increase a potential award). Additionally, in everything Rheinstein penned to opposing counsel, he coupled unacceptable threats with demands for exorbitantly high amounts in settlement.

As Judge Klavans found, aggravating factor (c), "a pattern of misconduct," is implicated. "A pattern of misconduct is formed by a series of acts, even if that series of acts is performed to achieve a single goal." *Hodes*, 441 Md. at 207, 105 A.3d at 575. Rheinstein engaged in a pattern of misconduct by pursuing the underlying vexatious

73

litigation between 2011 and 2014, threatening attorneys and filing countless unnecessary filings in both the courts of this State and the federal court. He demonstrated a pattern of misconduct by obstructing the disciplinary action against him in excess of three years, removing the matter to the federal court twice, filing motions to dismiss and completely disregarding discovery orders and requests, as well as doing data "dumps" on Bar Counsel and alleging that Bar Counsel was engaged in an "illicit strategy."

As to aggravating factor (d), "multiple offenses," we have sustained Judge Klavans' conclusions regarding multiple rule violations, so that this factor weighs in favor of a more severe sanction. *See Mixter*, 441 Md. at 530, 109 A.3d at 69–70 (stating that "Factor (d) . . . is implicated when an attorney violates multiple disciplinary rules.").

Aggravating factor (e) regarding bad faith obstruction during the disciplinary proceeding surely is implicated. Rheinstein filed two frivolous Motions to Dismiss in the Circuit Court,[25] failed to respond to Bar Counsel's discovery requests in violation of the Circuit Court's scheduling order and the Maryland Rules, removed the disciplinary case twice to the federal court without any bases, engaged in conduct in an attempt to bully Bar Counsel and sought to disqualify Bar Counsel on numerous occasions, acts which clearly were intended to obstruct the disciplinary process. *See Attorney Grievance Comm'n v. Maldonado*, 463 Md. 11, 51, 203 A.3d 841, 864 (2019) (finding bad faith obstruction where attorney, in a disciplinary action, evaded service, failed to file a timely answer and failed to timely and completely respond to discovery requests); *Attorney Grievance Comm'n v.*

---

[25] Motions to Dismiss an attorney grievance matter are not entertained in the circuit court. *See* Rule 19-725.

*Phillips*, 451 Md. 653, 672, 155 A.3d 476, 487 (2017) (finding obstruction where attorney filed a frivolous motion to quash an investigative subpoena "for the sole purpose of obstructing the investigation and delaying his having to make a statement under oath"); *Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 280, 148 A.3d 300, 318 (2016) (finding bad faith obstruction where attorney refused to comply with Bar Counsel's requests for information and otherwise failed to cooperate with discovery).

As to factor (f), the "submission of false evidence, false statements, or other deceptive practices during the disciplinary process," Judge Klavans found that Rheinstein "has shown a propensity to misstate the law and to omit inconvenient but essential facts from his arguments." Judge Klavans noted that Respondent asserted, in a motion in limine to prevent Bar counsel from presenting evidence relating to frivolous filings, that "no court has ever found any filing presented by the Respondent to be 'frivolous.'" Rheinstein's contention, however, flies in the face of the determination by the Court of Special Appeals that his arguments lacked merit as well as the findings of the United States District Court which found his Qui Tam complaint to be "parasitic." *See Attorney Grievance Comm'n v. McLaughlin*, 456 Md. 172, 205, 171 A.3d 1205, 1224 (2017) (finding that attorney implicated aggravating factor regarding the submission of false evidence, false statements or other deceptive practices by making "multiple representations in her sole communication with Bar Counsel"); *Attorney Grievance Comm'n v. Rand*, 445 Md. 581, 643, 128 A.3d 107, 144 (2015) (affirming finding that factor (f) had been implicated where Rand provided false statements to Bar Counsel).

With regards to aggravating factor (g), a "refusal to acknowledge wrongful nature of conduct," Judge Klavans found that, even prior to the hearing before him, Rheinstein asserted that he had "not violate[d] a single Maryland Rule of Professional Conduct." Before us, Rheinstein only acknowledges that several of his emails may have been unacceptable. *See Maldonado*, 463 Md. at 52, 203 A.3d at 865 (concluding that aggravating factor (g) had been implicated where, at oral argument, the respondent "did not show remorse for her actions and instead blamed everyone but herself for this disciplinary action.").

Throughout the disciplinary process, Rheinstein also advanced a conspiracy theory between Imagine and its attorneys, even alleging that Bar Counsel's requests to his interrogatories "conclusively establish[ed] that [Bar Counsel was] attempting to try the merits of Qui Tam I," further reflecting his lack of remorse. *See Rand*, 445 Md. at 642, 128 A.3d at 144 (noting respondent's failure to acknowledge any wrongdoing, "instead arguing that he simply made 'clerical errors,' was not required to provide [client] with any invoices and only attempted to 'set conditions' on Bar Counsel's inquiries for documentation rather than refused to comply."); *Mixter*, 441 Md. at 530, 109 A.3d at 70 ("Out of Mixter's one-hundred and six pages of exceptions, he only asserts, in one sentence, that he is 'sincerely remorseful,' without elaboration.").

With respect to aggravating factor (i), the "substantial experience in the practice of law," Judge Klavans found that, "[a]t the time of Respondent's first involvement in the cases underlying this matter [he] had been practicing law for six years." Since then, "[t]hrough the myriad litigations and this disciplinary process, with its various detours and

delays, Respondent has now practiced nearly fourteen years." Judge Klavans further noted that because Rheinstein had proceeded mostly *pro se* during the disciplinary matter, and after reviewing the pleadings drafted in both the underlying matter and the disciplinary action, "along with his sophisticated efforts to prosecute appeals and removals to the Federal courts demonstrate substantial experience in the practice of law."

Rheinstein, however, excepts to the finding of substantial experience, contending that "the underlying litigation presented for the first time the Respondent had litigated a complex fraud case and the first time he litigated any case in Maryland's appellate courts."

What is troublesome regarding this aggravating factor is that Rheinstein's representation in the Moore matter reflected a general incompetence and vexatiousness that we would expect no one with any experience in the law to exhibit. On the other hand, only before us is Rheinstein alleging his inexperience, as he represented his extensive experience to Mr. Coe when he presented himself as someone licensed to practice law in seven states and the District of Columbia and repeatedly espoused the validity of his various legal theories. As a result, we overrule his exception.

The hearing judge found that "only mitigating factor (1), the absence of prior attorney discipline, is present in this matter, as conceded by Petitioner." Although Judge Klavans' order granting Bar Counsel's motion for sanctions and request for default does not specifically state that Respondent is precluded from presenting evidence of mitigation, Respondent's failure to disclose information concerning his expert witness—*i.e.*, Dr. Ratner—was the subject of the multiple discovery violations found by Judge Klavans. Thus, we concur in his findings.

77

Rheinstein excepts to Judge Klavans' failure to find that any of the other following mitigating factors are implicated, to include:

- absence of a dishonest or selfish motive;

- personal or emotional problems;

- timely good faith efforts to make restitution or to rectify consequences of misconduct;

- full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

- inexperience in the practice of law;

- character or reputation;

- physical or mental disability or impairment;

- delay in disciplinary proceedings; and,

- remoteness of prior offenses.

We have already determined, in our discussion of aggravation, that the "absence of a dishonest or selfish motive," "timely good faith effort to make restitution or to rectify consequences of misconduct," "full and free disclosure to disciplinary board or cooperative attitude toward proceedings" and "remoteness of prior offenses" did not exist in the present case nor "inexperience in the practice of law." Our determination that Rheinstein acted to delay the disciplinary proceedings also has been discussed *infra*.

With respect to personal or emotional problems and physical or mental disability or impairment, Rheinstein proffers that his discipline would have been obfuscated were he to

78

have been able to present Dr. Ratner's testimony.  We already have disposed of this contention by sustaining the discovery sanctions.

Moreover, Rheinstein did not proffer that Dr. Ratner would opine that the bases for the Rule 8.4(c) and (d) violations, the gravamen of the disciplinary sanction, were obviated or mitigated by Rheinstein's ADHD diagnosis.  In order to obviate the rule violation, the alleged emotional problems and mental disability must be the "root cause" of the misconduct so as to prevent the attorney from conforming his conduct to the Rules. *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463 (2001).

An attorney also bears the responsibility to proffer mitigation.  Rule 19-727(c); *O'Leary*, 433 Md. at 33, 69 A.3d at 1139.  Here, Rheinstein demurred in response to Bar Counsel's interrogatory regarding what mitigators he intended to proffer and failed to proffer sufficient mitigation of the Rule 8.4 violations, the gravamen of the present matter.

Rheinstein also contends that there "is no evidence that [he] has a bad character or bad reputation," but, rather, he asserts, the "record reflects that he went out of his way to represent his clients to uncover the fraud scheme at the heart of this case."  Rheinstein, however, never proffered evidence of his character or reputation below, nor does he point to any before us.  Accordingly, this mitigating factor cannot weigh in favor of a less severe sanction.

As a result, we shall impose a sanction of disbarment, in line with our jurisprudence regarding similar misconduct, based upon Rheinstein's misrepresentation to Judge Brown of the Circuit Court for Baltimore City at the hearing which occurred in December of 2011

79

and his vexatious litigation conduct, as well as his dilatory action during the disciplinary process.

With respect to Rheinstein's deceit, it is axiomatic that, "candor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar. . . . When a lawyer lies to a tribunal, he or she violates a norm that warrants disbarment." *Attorney Grievance Comm'n v. Fader*, 431 Md. 395, 438, 66 A.3d 18, 43 (2013) (internal quotation marks and citation omitted) (disbarring attorney for misrepresenting facts to the Office of Administrative Hearings and the administrative law judge in order to secure a postponement and failing to subsequently correct misrepresentations). Knowing misrepresentations, especially those made in order to obtain a more favorable outcome, also generally warrant the sanction of disbarment. *See Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 735–36, 93 A.3d 262, 285 (2014). In *Attorney Grievance Commission v. Mixter*, 441 Md. 416, 109 A.3d 1 (2015), we disbarred Mixter upon concluding that he had violated Rules 3.1, 3.3, 3.3(a)(1), 3.4(a), (c) and (d), 4.1(a)(1) and 8.4(a), (c) and (d). Our decision to disbar Mixter rested on his repeated misrepresentations to the court which had been made "in an effort to abuse and browbeat his opponents into complying with his excessive and unnecessary discovery requests." *Id.* at 526, 109 A.3d at 67.

Repeated misrepresentations are not required, as "'one instance of misconduct can be so egregious as to warrant the imposition of a significant sanction,' such as disbarment." *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 525, 979 A.2d 146, 157 (2009) (citations omitted); *see also Gisriel*, 409 Md. at 386, 975 A.3d at 363 (disbarring an

80

attorney after a single instance of misappropriating funds by forging a client's signature on a check); *Attorney Grievance Comm'n v. Roberts*, 394 Md. 137, 146, 166–67, 904 A.2d 557, 562, 574–75 (2006).

In *Garcia*, we disbarred him for misrepresenting to the Immigration and Naturalization Service that he was the employer of his client on a visa application which resulted in the attorney's conviction by guilty plea to conspiracy to commit immigration fraud. We found the one instance of deceit and fraud to warrant the sanction of disbarment.

In *Attorney Grievance Commission v. Framm*, 449 Md. 620, 144 A.3d 827 (2016), we disbarred Framm because of her conduct when pursuing fees against a former client. At a hearing on the contested attorneys' fee, Framm had testified that the former client had a "fairly good capacity to understand agreements," knowing, however, a judge had found the client to be incompetent. *Id.* at 641–42, 144 A.3d at 840. We noted that such conduct deserved "the ultimate sanction" because Framm had "lied to and deceived the court to the detriment of her former client for her own monetary gain." *Id.* at 668, 144 A.3d at 855; *see also Attorney Grievance Comm'n v. Trye*, 444 Md. 201, 118 A.3d 980 (2015) (disbarring attorney based, in part, upon false statements made to court regarding which documents she subpoenaed in divorce case); *Attorney Grievance Comm'n v. McClain*, 406 Md. 1, 16, 956 A.2d 135, 144 (2008) (disbarring attorney for informing the court that his client had settled a matter, when, in fact, he had not, a fact he knew).

Rheinstein misrepresented facts to Judge Brown in the Circuit Court in an effort to intimidate his opponents; he advanced baseless and unsubstantiated claims of fraud against Imagine and led Judge Brown to believe that Imagine and its principals had been facing

81

criminal charges, without bases. Throughout the course of the litigation, Rheinstein attempted to disqualify every attorney retained by Imagine without bases and bully counsel into settling the cases for ridiculous amounts.

As an officer of the court, Rheinstein was "expected to manifest integrity," *Mixter*, 441 Md. at 526, 109 A.3d at 67, but, instead, misrepresented facts to the Circuit Court with the intent to secure a favorable outcome, thereby, resulting in the use of abhorrent tactics in seeking settlement and subordinating his duty to his clients and the court. He also pursued litigation in a vexatious manner and intolerably delayed and sullied the ensuing disciplinary process. Disbarment must follow.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JASON EDWARD RHEINSTEIN.**

82

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/77a15agcn.pdf